LITTLE ROCK SCHOOL
DISTRICT, Plaintiff,

v.

PULASKI COUNTY SPECIAL SCHOOL
DISTRICT NO. 1; North Little Rock
School District; Arkansas State Board
of Education; Wayne Hartsfield; Wal-
ter Turnbow; Harry A. Haines; Jim
Dupree; Dr. Harry P. McDonald; Rob-
ert L. Newton; Alice L. Preston; Jeff
Starling; Earle Love; Bob Lyon; John
Ward; Judy Wear; Leon Barnes; Ma-
rianna Gosser; Steve Morley; Mac
Faulkner; Bob Moore; Don Hindman;
Shirley Lowery; Sheryl Dunn; David
Sain; Bob Stender; Grainger Williams;
Richard A. Giddings; Goerge A.
McCrary; Buddy Raines; and Dale
Ward, Defendants,

Katherine Knight, Individually and as
President of The Little Rock Classroom
Teachers Association (L.R.C.T.A.), et
al., Intervenors.

No. LR-C-82-866.

United States District Court,
E.D. Arkansas, W.D.

Aug. 7, 1987.

P.A. Hollingsworth, Philip E. Kaplan,
Janet L. Pulliam, John M. Bilheimer, Little
Rock, Ark., for plaintiffs.

Wright, Lindsey & Jennings, Little Rock,
Ark., Neal, Gerber & Eisenberg, Chicago,
Ill., for Pulaski County Special School Dist.
No. 1 et al.

C.R. McNair, III, Asst. Atty. Gen., Shar-
on Streett, Dept. of Educ., Little Rock,
Ark., for Ark. State Bd. of Ed. et al.

Jack, Lyon & Jones, Stephen L. Curry,
Little Rock, Ark., for North Little Rock
School Dist. et al.

Theodore Shaw, New York City, John W.
Walker, Little Rock, Ark., for intervenors
Joshua et al.

Richard Roachell, Cearley, Mitchell &
Roachell, Little Rock, Ark., for intervenors
Knight et al.

Robert D. Cabe, Cabe & Lester, Little
Rock, Ark., for intervenors McKinney, et
al.

## MEMORANDUM OPINION
## AND ORDER

HENRY WOODS, District Judge.

■ The law regarding civil comtempt is well settled. The complaining party must prove with clear and convincing evidence that the non-moving party has failed to use reasonable energy and diligence to comply with a clear and unambiguous court order. *EEOC v. Local 28 of Sheet Metal Workers' International Association*, 753 F.2d 1172, (2nd Cir.1985), *cert. granted*, 474 U.S. 815, 106 S.Ct. 58, 88 L.Ed.2d 47 (1985) *aff'd*, — U.S. ——, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986). It is unnecessary to demonstrate that the disobedience was intentional or willful. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). In the instant case, the North Little Rock School District (NLRSD) has moved to have the Little Rock School District (LRSD) held in civil contempt on the basis of what NLRSD contends was a July 30, 1987 vote by LRSD board of directors not to fill vacant magnet seats as required by court orders discussed below. A show cause hearing was heard on August 5, 1987.

The primary document in issue is the Stipulation for Recommendations Regarding Magnet Schools which was drafted by the parties (the Joshua intervenors did not actually sign the stipulation, but ratified the agreement after specific assurances for their participation were added). After the attorneys drafted the document, the Magnet Review Committee (MRC) endorsed the agreement and presented it to this court for approval as its recommendation.

■ I examined the Stipulation in detail, approved it in all respects, and incorporated it into my order of February 27, 1987. Of course, once the Stipulation became incorporated into a court order, it became enforceable by contempt order just as any other court order would be. *S.E.C. v. Randolph*, 736 F.2d 525 (9th Cir.1984). The Stipulation specifically states that if any school district fails to fill its allocation of

seats, those unused seats will be filled by applicants from other districts.

Compliance with a second court order also is in issue. In a July 2, 1987 Order which memorialized my oral decision of May 22, I directed all NLRSD and PCSSD students who had applied to magnets as of May 22 admitted. LRSD's contention that they were unaware of the numbers of black applicants from PCSSD is unsupported by the record. As set out in that order, the attorneys for each district agreed to these admissions in the May 22 hearing. In fact the LRSD attorney assured me in open court on that date that he had verified with the Superintendent of LRSD that all of PCSSD and NLRSD magnet applicants as of May 22 could be accommodated. (TR May 22 hearing, p. 646). Prior to that assurance the PCSSD had introduced a document which reflected the numbers of PCSSD applicants by race at each grade level. The racial imbalance at Carver Magnet was discussed at length at the May 22 hearing (TR pp. 621–23). LRSD attorneys assured me that the prospects for Carver at a new location would remedy any temporary oversubscription of blacks. The July 2 Order also directed that unfilled seats of NLRSD and PCSSD anticipated in the Stipulation were to be released in three increments and made available to LRSD students. On July 15, 50% of unfilled seats were to revert; on August 3, 80% of the unfilled seats would revert to LRSD students; and on August 24 any remaining unfilled seats would be released. I suggested this incremental transfer of seats at the May 22 hearing to insure an orderly transfer of these seats (TR May 22 hearing, p. 588). LRSD made no objection to those dates and percentages. LRSD's only concern at that point was in promptly notifying their magnet applicants of acceptance.[1]

■ It is indisputable that the Stipulation incorporated into the February 27, 1987 Order and the July 2 Order were clear and unambiguous. LRSD does not suggest that there is any lack of clarity but, in

1. Counsel for LRSD commented at the May 22 hearing, "... since there's no notion that [the magnets] are going to be oversubscribed, what's the big deal?"

defense of NLRSD's show cause motion, contends that the July 30, 1987 vote of its board of directors was to ask the MRC and/or this court for relief from those court orders, not to refuse to comply. The minutes of the July 30 open board meeting (a verbatim transcript) reflect absolutely no mention of asking the MRC or this court to modify either order, but they do reflect that the board voted not to fill the seats. One LRSD board member testified at the show cause hearing that at the time he voted, he did not realize that court orders required the seats to be filled. The LRSD board members testified at the show cause hearing that the reason the minutes do not reflect the discussion of application for modification of the orders was because that conversation was held in executive session, outside the hearing of its patrons, the general public and press (a rather blatant violation of Arkansas's Freedom of Information Act). That a discussion of this magnitude would be held in a closed meeting is troublesome. The testimony regarding this discussion was, frankly, less than credible. However, considering that civil contempt requires an elevated standard of proof, that is, "clear and convincing evidence," I will assume the discussion did take place and that the board's vote was actually to petition the court for modification of the order.

The discussion cannot end with this finding. The fact is that one segment of seats was ordered released on July 15, 1987. Testimony from LRSD that there were many more released seats than the district could have anticipated is simply not true. The February Stipulation anticipates unused seats. I stated on May 22 that I was extremly pleased with enrollment to date and that I was hopeful that 1000 students could be attracted from NLRSD and PCSSD the first year. I expressly stated that the figure might be a bit "optimistic." If LRSD did not know the approximate number of vacancies, they should have. But, even assuming the Stipulation was entered into erroneously, or that the orders were based on incorrect assumptions or data, the United States Supreme Court in a recent opinion has held squarely that such evidence is irrelevant in a show cause hear-

ing. "In any event, a 'contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus becomes a retrial of the original controversy.'" *Local 28 of Sheet Metal Workers v. E.E.O.C.,* —— U.S. ——, 106 S.Ct. 3019, 3032, n. 21, 92 L.Ed.2d 344 *quoting Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948).

From the May 22 hearing to this day, LRSD has yet to ask that this court modify these orders. Assuming LRSD plans to file a motion to modify the orders pursuant to Rule 60(b), that Rule clearly states that orders remain in effect until modified. This court cannot and will not *sua sponte* modify these orders. The July 15 release date had already passed two weeks prior to the board's July 30 vote to seek modification. Consequently the LRSD is technically in civil contempt of these court orders. Rather than energetically and diligently complying with the orders, the LRSD voted to ask for modification after the first release of seats was a *fait accompli.* I do not find the failure to be intentional or willful on the part of any board member. However, as explained, *supra,* intent is irrelevant to the issue of civil contempt.

Although the LRSD is technically in contempt, I find it inappropriate to tax costs or attorneys fees. I am confident that LRSD will immediately move to comply. However, the LRSD Board, the LRSD administration and its attorneys are put on notice that I will regard as extremely serious, subject to severe sanctions, any further delay in the implementation of the orders previously issued in this case with regard to magnet schools. In accordance with Orders previously in effect, eighty per cent (80%) of the unfilled PCSSD and NLRSD magnet seats shall be filled by LRSD applicants in such proportion as to result in a 50–50 black to white ratio. Since the opening of school is less than a month away, the parents of the affected children shall be *immediately* notified of the assignments.