ARKANSAS COUNTY *v.* DESHA COUNTY;
Arkansas Electric Cooperative Corporation;
Public Service Commission

01-1085                                          94 S.W.3d 888

Supreme Court of Arkansas
Opinion delivered January 9, 2003

*Pike & Bliss, P.A.*, by: *George E. Pike, Jr.*, and *Deborah Pike Bliss*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marsha Talley Ballard*; *Robert M. Lyford*; and *Stephen P. Williams*, for appellee Arkansas Electric Cooperative Corporation.

W H. "DUB" ARNOLD, Chief Justice. This appeal involves approximately $1.2 million in annual *ad valorem* tax revenue from a hydroelectric generating station (hereinafter the "HydroPlant") on the Arkansas River. The Legislature initially set the Arkansas River as the boundary between Arkansas County and Desha County in the vicinity of the HydroPlant, which sits on a peninsula or point of land known as Stillwell Point.

Although the taxes on the HydroPlant have always gone to Desha County, Arkansas County now asserts that the facility is actually located in Arkansas County. We hold that the trial court correctly found that Arkansas County's claim is barred by laches, and we therefore affirm.

Jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(7), as there was a previous appeal to the Supreme Court. The first appeal followed the trial court's dismissal of the complaint on the grounds that the complaint should have been heard by the Public Service Commission. This court reversed and remanded for trial in the Arkansas County Chancery Court. *See Arkansas County v. Desha County*, 342 Ark. 135, 27 S.W.3d 379 (2000).

After a trial on the merits, the trial court found that the Arkansas River boundary was in an old riverbed immediately east of the HydroPlant, in Desha County. The trial court found that the boundary between Arkansas County and Desha County did not change when the Arkansas River cut across the neck of Stillwell Point because the Arkansas River did not move from east of Stillwell Point to west of Stillwell Point by the process of accretion. The trial court's ruling was based on the exception to the general rule that river boundaries move as the river moves, except when a new channel is created by a sudden and perceptible avulsion. The trial court further found that Arkansas County was barred by laches from seeking to establish its true boundary because it neglected to start to establish the boundary until the HydroPlant announced its plans to build at the site.

Appellee Arkansas Electric Cooperative Corporation (hereinafter "AECC") has remained neutral on the issue of whether the HydroPlant is located in Arkansas County or Desha County, and AECC asserts no position on this issue. AECC states that it has no interest in a final determination of the identity of the recipient of tax revenue to be derived from the HydroPlant. AECC's asserts that its only interest is to pay any tax due to the correct taxing authority.

Arkansas County brings two points on appeal: first, that the trial court committed error by creating a new exception to the general rule that river boundaries move with the river, and second, that the trial court erred in holding that Arkansas County was barred by laches from filing this litigation to establish its true boundary. We affirm the trial court's finding that Arkansas County's claim is barred by laches from asserting any claim of sovereignty over the site five decades after its alleged claim arose, and, therefore, we do not reach the argument of whether the trial court erred in finding that the boundary changed or did not change due to accretion or avulsion.

To better understand the issues in this case, a brief introduction of the facts is beneficial. At the time that the Legislature fixed the Arkansas River boundary between Arkansas County and Desha County, Stillwell Point was on the west, or Desha County, side of the Arkansas River. In the early 1940s, the Arkansas River changed course by cutting across the neck of Stillwell Point, possibly by floods in 1941, 1942, 1943, 1944, and 1945. As a result of this cut across the neck of Stillwell Point, Stillwell Point was now located east of the Arkansas River.

The trial court stated in its decree:

> The cutoff is dramatically illustrated by comparing Corps of Engineers aerial photographs and charts of 1940, 1943, 1945 and 1946 (Desha County Exhibits 23, 24 and 26; Arkansas County Exhibits A4 and A5). The cutoff is also clearly shown on the survey prepared by I. Bankston, Desha County Deputy Surveyor, and T.J. Strode for Mrs. W.J. Stillwell in August and September 1944 (Desha County Exhibit 3).

Although the Arkansas River was now west of Stillwell Point, the landmass comprising Stillwell Point was left intact.

For almost fifty-five years, the fact that the Arkansas River cut across the neck of Stillwell Point was of no consequence. For all purposes Desha County claimed and exercised control over Stillwell Point. Real property, tax and school district records continued to demonstrate that Stillwell Point was, as it always had

been, in Desha County. Arkansas County did not exercise or attempt to exercise any control over, or make any claim with respect to, Stillwell Point.

Further, Arkansas County failed in its efforts to show that it ever assessed or collected taxes on Stillwell Point. Stillwell Point became the focus of Arkansas County's attention when the HydroPlant announced its intention of building on the site. Then, Arkansas County commenced this litigation with a complaint in Arkansas County Chancery Court in 1999. Arkansas County claimed that as a result of the Arkansas River cutting across the neck of Stillwell Point decades ago in the 1940s, it can now take Stillwell Point as a part of Arkansas County. Arkansas County asserts that it acquired Stillwell Point, and Desha County lost Stillwell Point, more than a half of a century ago, since the boundary between the counties changed fifty-five years ago by the process of accretion. However, we do not resolve whether the boundary changed due to accretion or avulsion, because Arkansas County is barred by laches from asserting any claim of sovereignty over the site decades after its alleged claim arose.

■ The trial court found that the real property, tax and school district records introduced by Desha County proved that Desha County claimed and exercised control over the HydroPlant site both before and after the cutoff occurred. The trial court also found that Arkansas County neither exercised nor attempted to exercise control over the site until after the HydroPlant plans were made public, some fifty years after it allegedly became part of Arkansas County. This finding by the trial court is entitled to deference and will not be reversed unless this court finds that the trial judge was clearly erroneous. *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999).

■ The trial court held that Arkansas County's long acquiescence in Desha County's taxation and exercise of control over the site constituted laches, not equitable estoppel as wrongly asserted by Arkansas County. Although closely related, the defenses of laches and equitable estoppel are not identical.

> The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them, that by reason of his delay some adverse party has good reason to believe those rights are worthless or have been abandoned, and that because of a change of conditions during this delay it would be unjust to the latter to permit him to assert them. Laches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim.

*Goforth*, 338 Ark. at 77–78, 991 S.W.2d at 586–87 (*citations omitted*). Accordingly, this case involves laches, and not equitable estoppel, because the trial court correctly determined that Arkansas County permitted Desha County to exercise control over and rely upon the taxes from the HydroPlant site.

Nevertheless, Arkansas County asserts that the facts are that the only governmental activity that was available to Arkansas County after the Arkansas River's relocation was to collect a few pennies of taxes on the few acres occupied by the future site of the HydroPlant. In 1954, Desha County continued its practice of collecting real estate taxes on the wild and unimproved overflow timberland of the amount of six cents per acre.

Arkansas County contends that by 1958, the United States Corps of Engineers was building a bank stabilization and navigation system of the Arkansas River, which would require acquisition. And, in 1964, the United States took title to the site and caused it to be tax exempt by filing its condemnation suit. Therefore, Arkansas County argues that there was only a window between 1945 and 1958 in which Arkansas County could be accused of failing to exercise governmental authority (taxation) over the disputed area. No taxes of any nature could be collected from the site after it became exempt in 1964 until AECC began building its taxable HydroPlant in 1994 on property leased from the United States. Arkansas County contends that the facilities of the HydroPlant became taxable in 1995. Hence, for the first time

in history, Arkansas County would be derelict in its duty if it did not fight to collect substantial taxes on the said property.

The facts of this case are similar to those in *Magnolia Special School District, No. 14 v. Rural Special School District, No. 3*, 302 Ark. 49, 149 S.W. 579 (1941). In that case, the plaintiff school district acquiesced in the defendant school district's taxation and exercise of control over certain unimproved sections of land for roughly ten years. Then, when oil was discovered in the area, the plaintiff school district asserted a claim. This court held that the plaintiff school district, having slept on its rights for ten years, was barred from asserting its claim. *Magnolia, supra.*

Here, even if Arkansas County had ever had any rights to Stillwell point, it slept on those rights for years. As a result of this silence, Arkansas County is barred from asserting that the HydroPlant site is in Arkansas County. Arkansas County does not dispute the fact that it sat on its alleged rights for five decades. Instead, Arkansas County argues that for all those years Stillwell Point simply was not worth the trouble, and until recently it made no economic sense to try and take Stillwell Point from Desha County because the taxes collected by Desha County were not worth the expense.

The trial court's finding that as a matter of fact that Desha County always exercised control over Stillwell Point was not clearly erroneous. The trial court concluded that as a matter of law Arkansas County was guilty of laches. Therefore, the trial court correctly held that, even if the HydroPlant site had become part of Arkansas County by accretion, Arkansas County was guilty of laches.

Affirmed.

HANNAH, J., not participating.