2014 Ark. App. 261

**Harold "Bud" WARD, Appellant**

v.

**Linda WARD (Tutton), Appellee.**

**No. CV–12–1084.**

Court of Appeals of Arkansas.

April 30, 2014.

---

Sheila F. Campbell, P.A., North Little Rock, by: Sheila F. Campbell, for appellant.

The Henry Firm, P.A., by: Brianne A. Franks, for appellee.

ROBIN F. WYNNE, Judge.

Harold "Bud" Ward appeals from an order of the Pulaski County Circuit Court in which the circuit court found him in contempt for failing to obey prior orders. He argues on appeal that the order constitutes an improper modification of the divorce decree, that appellee Linda Ward (Tutton) failed to prove contempt, and that she failed to reserve the issue of attorney's fees. We affirm.

The parties were divorced via a decree entered on June 29, 2011. The parties' property included several different businesses. Appellee was awarded Ward's Turf, Incorporated. Appellee was also awarded ownership of Bud Ward's Antique Cars. However, the marketable assets of that company were ordered to be sold at public auction with the proceeds to be divided between the parties. Appellant was awarded Bud Ward's Collector Cars. Appellee was awarded a parcel of commercial real estate in Little Rock that was encumbered by two separate mortgages. Appellee was ordered to pay the first mortgage and appellant was ordered to pay the second mortgage. Appellant was awarded the marital home and ordered to pay the mortgage on that property. Appellee was awarded a lien on the marital home equal to the amount of the second mortgage on the commercial property. Both parties were awarded certain personal property. Appellant was ordered to pay alimony.

Appellee filed a motion for contempt on June 30, 2011, the day after the decree had been entered. In the motion, she alleged that appellant had failed to pay alimony and had failed to make payments on the second mortgage on the commercial property. She also alleged that he had sold a

jukebox owned by the antique-car business in violation of the circuit court's restraining order. The circuit court entered an order on August 10, 2011, in which it found appellant in contempt for willfully failing to pay the loan and ordered him incarcerated. The circuit court set a $5000 bond, which was ordered to be released to appellee when paid. Appellant paid the bond, and the funds were released to appellee. All other contempt issues were reserved.

The circuit court entered another order finding appellant in contempt and imposing sanctions on September 2, 2011. In the order, the circuit court found that appellant was in willful contempt for failing to pay his obligations as ordered in the decree. Appellant was ordered to deliver the properly listed in two exhibits submitted by appellee to her by 5:00 p.m. on September 2, 2011. The remaining issues were taken under advisement by the circuit court. The order also granted appellee permission to file a written fee petition upon entry of the circuit court's decision regarding the outstanding issues. Appellee's attorney advised the circuit court, in a letter filed on September 7, 2011, that, although appellant returned some of the items listed, he did not return all of the items, and some of the items he returned had been damaged while in his possession.

Appellant filed a motion to compel enforcement of divorce decree and for contempt citation on November 14, 2011. In the motion, appellant alleged that appellee refused to agree to an auctioneer and a time to auction off the assets of the antique-car business. He also alleged that appellee sold certain assets of the business without giving him his share of the proceeds. He also requested that appellee be held in contempt for failing to give him his toolboxes, a lifetime-achievement trophy, and a bicycle. Appellee filed a motion for contempt on November 16, 2011, in which she alleged that appellant failed to return property and make payments as ordered.

A hearing on the motions filed on November 14, 2011, and November 16, 2011, was held on May 17 and 18, 2012. Appellee testified that her property that was returned damaged by appellant had been in good condition when she left it with him. According to her, the truck that was returned had a dent on the driver's side, a broken windshield, chipped paint, a dented fender, and ruined upholstery. Mike Jasso with Sally's Body Shop estimated the repairs for damage to the truck's interior to be $4000. Appellee had to put new batteries in the truck and have work performed on the engine after it was returned. The trailer that was returned had a flat tire. Appellee had to get duplicate titles to the truck and trailer because appellant would not return the original titles. Some of the items in the trailer had not been tied down. Several model cars had been haphazardly thrown into a box on the trailer and were rendered worthless. Not all the model cars were returned. Several other items of appellee's properly from the business had not been returned. Appellee's golf cart had been damaged by exposure to the elements while in appellant's possession. The upholstery was discolored and in poor condition. Appellee testified that it had previously always been kept inside a building. A neon Cadillac emblem was returned damaged. Appellee stated that none of her items from the marital home had been returned to her. Appellant failed to pay appellee the proceeds from the jukebox he sold. According to appellee, the properly returned to her by appellant was not worth anything approaching what she had expected to receive through an auction.

Appellee testified that the payments on the second mortgage on the commercial property were continually two months behind. Real estate taxes on the marital

home for 2009 and 2010 had not been paid by appellant. Appellee testified that the amount of unpaid taxes was $8,173.30. According to appellee, appellant had failed to keep the mortgage on the marital residence current. Appellee expressed concern over what she characterized as the "deterioration" of the outside of the marital home since the divorce and stated that appellant had failed to perform routine maintenance on the home.

Appellee testified that the auction was never performed because appellant would not choose an auctioneer and insisted on performing the auction himself. Appellant denied interfering with the auction. Appellee stated that she saw appellant purchase several vehicles at an auction on September 24, 2011. She estimated that he spent approximately $57,000 for cars that day. Appellant testified that the money had come from friends. Appellee testified that she knew appellant had been to several other auctions, although she did not know how much he had spent. Appellee stated that, after appellant had paid the $5000 bond, she paid approximately $3900 to bring the note on the commercial property current and gave the remainder to her attorney for fees. Appellant testified that he understood that the entire $5000 would be given to the bank. Appellee denied selling anything since the decree had been entered.

Michael Fisher, the executive vice president and chief lending officer with National Bank of Arkansas, testified that the parties have loans that are secured by the commercial property in Little Rock. Mr. Fisher stated that, at the time of the hearing, seven payments had been made on the second mortgage since August 2011. No payment was made in September 2011. Prior to a payment that was made the day before the hearing, the second mortgage had been in default for more than thirty days. The loan remained thirteen or fourteen days past due, despite the payment. Due to foreclosure proceedings that had been started in 2011, the bank ordered an appraisal in August 2011 that cost $2200.

Jacqueline Tutton, appellee's daughter-in-law, testified that she saw the items that were delivered to appellee by appellant on September 2, 2011, and they had not been handled carefully. She stated that appellant historically took good care of things and kept them clean and maintained. Mrs. Tutton stated that the model cars looked as though someone had taken them and thrown them in boxes in a manner that would not have been acceptable to appellant if the models were to be displayed in his shop. Kevin Tutton, appellee's son, agreed that appellant historically took great care with his properly. He stated that quite a few of the model cars were broken and scratched. He stated that the damage to the truck was not present when appellant took the truck.

Appellant testified that the dents in the truck were caused by a tire blowout in 2009. He stated that the truck was in good condition when he gave it to appellee. He also testified that other items that she alleged had been damaged were not and that items she claimed had not been returned to her had been sold prior to the divorce. Appellant denied damaging any of the model cars. He testified that appellee refused to return his tools, trophy, and bicycle. Appellant admitted having certain items that belonged to appellee in the home, but he indicated that he was afraid to meet her anywhere to give them to her. He also admitted failing to deliver certain items on September 2, 2011, and explained that the trailer was full.

The circuit court entered its order on August 20, 2012. In the order, the circuit court found that appellant had failed to pay the second mortgage on the commercial property, causing the mortgage to be in default, past due, or "slow paid" continu-

ally since the entry of the previous order. The circuit court specifically found that appellant had the ability to pay and that his failure to do so was willful and intentional contempt of the court's orders. The circuit court also found that appellant had failed to comply with prior orders by failing to return property to appellee, returning property to appellee in a damaged condition, thwarting efforts to auction property, and failing to pay real estate taxes on the marital home. The circuit court awarded the parties the property from the antique-car business that each had in his or her possession, due to appellant's failure to return property for auction and causing damage and loss of value to property. Appellant was awarded the proceeds from the sale of |7the jukebox. The marital home was ordered to be sold, with the proceeds applied to the outstanding mortgages. Appellant was ordered to pay any balance remaining on the indebtedness after application of the proceeds from the sale. The amount paid to appellee's attorney out of the $5000 bond was applied as a credit against attorney's fees claimed by appellee, and appellee was awarded attorney's fees in the amount of $12,810.

■ Appellant appeals from an order finding him in contempt and imposing sanctions as a consequence of the contempt. Contempt is divided into criminal contempt and civil contempt. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Id.* Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* Because appellant was held in civil contempt, we apply our standard of review for civil contempt, which is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Id.*

■ Citing Arkansas Rule of Civil Procedure 60, appellant first argues that the circuit court's order constitutes an impermissible modification of the divorce decree because it gave all the assets of the antique-car business to appellee. To correct errors or mistakes or to prevent the miscarriage of justice, the court may modify or vacate a judgment, order, or decree on motion of the court or any party, with prior notice to all parties, within ninety days of its having been filed with the clerk. Ark. R. Civ. P. 60(a) (2013). In this case, the circuit court did not make a modification to correct error or mistake or to prevent the miscarriage |8of justice. Instead, the circuit court imposed a sanction as a remedy for the contempt. Thus, appellant's reliance on Rule 60(a) is misplaced. To the extent that appellant may also be arguing in this point on appeal that the sanction for the contempt was excessive, the trial court may, in its wide discretion, choose to assign much, little, or no punishment at all for a contempt citation. *Davenport v. Uselton*, 2013 Ark. App. 344, 2013 WL 2278089.

■ Next, appellant argues that appellee failed to prove that he willfully failed to pay the mortgage. Appellant contends that appellee should have applied the entire $5000 bond to the mortgage on the commercial property and, if she had done so, the mortgage would not have been past due. Appellee testified that she paid a sufficient sum out of the $5000 to bring the mortgage current. The circuit court ordered only that the bond be paid to her. Although it may have intended to do so, the court never ordered her to pay the full $5000 to the bank, and appellant was given a credit for the amount paid to appellee's attorney. Appellant was not held in contempt because the full $5000 was not paid to the bank; he was held in contempt because he failed to keep the note current after appellee had applied the proceeds

from the bond. Although he argues in his brief that there was no evidence that he failed to pay the note, he is mistaken. There was testimony from appellee and an employee of National Bank of Arkansas that the account on the second mortgage had been past due and "slow paid" since the bond had been paid. This testimony is sufficient for the circuit court to reasonably conclude that appellant willfully failed to make payments as ordered, and the circuit court's finding of contempt is not clearly against a preponderance of the evidence.

■ Appellant also argues that appellee failed to prove that he willfully refused to return property. Appellant admitted at the hearing that he had items belonging to appellee that he had not returned. Although he attempted to explain this failure in his testimony, the circuit court indicated expressly in its order that it did not find his testimony credible. In addition to the items that had not been returned, the circuit court found that appellant was in contempt for damaging certain items of property before returning them to appellee. Again, there was conflicting testimony as to whether appellant had damaged the property, and the trial court resolved the conflict in favor of appellee. The evidence submitted at the hearing is sufficient for the circuit court to have concluded by a preponderance of the evidence that appellant committed contempt by willfully failing to return properly to appellee and returning property in damaged condition.

■■ Appellant also appears to argue that the only proper remedy for the contempt was a fine and that the sanction imposed by the circuit court bore no relation to the contempt. In contempt cases, the trial court has discretion to fashion the punishment to fit the circumstances. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007). In this case, the circuit court had previously ordered that appellant be jailed,

and it imposed a $5000 bond. That did not stop the contemptuous behavior by appellant. In light of this, the circuit court fashioned a remedy that it felt would be effective in obtaining compliance by appellant. As noted above, a trial court has wide discretion in determining the severity of the punishment for contempt. *Davenport, supra.* Given the circumstances, including appellant's repeated, ongoing failures to abide by the circuit court's orders, we hold that the circuit court did not abuse its discretion in fashioning the contempt sanction imposed.

Appellant's final argument is that appellee failed to reserve the issue of attorney's fees. The August 10, 2011 order expressly reserves the issue of attorney's fees. The September 2, 2011 order specifically states that appellee may petition for fees upon entry of an order disposing of the remaining contempt issues. Appellant's assertion that fees should only be awarded from September 2, 2011, forward is without merit, as the August 10, 2011 order reserves the fee issue, and appellee continually asked for attorney's fees in her various motions for contempt, placing appellant on notice that fees were being sought. Further, a circuit court has the inherent power to award attorney's fees in domestic-relations proceedings, and whether it should award fees and the amount thereof are matters within its discretion. *Friend v. Friend*, 2010 Ark. App. 525, 376 S.W.3d 519. It was proper for the circuit court to award attorney's fees to appellee in this case, and it did not abuse its discretion in doing so.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.