SLIP OPINION

Cite as 2014 Ark. App. 507

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
**No.** CV-14-56

| | |
|---|---|
| | **OPINION DELIVERED** OCTOBER 1, 2014 |
| ROBERT A. BUTLER<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. DR–2007–871(II)] |
| V. | |
| | HONORABLE ANNIE POWELL HENDRICKS, JUDGE |
| KARLA GLASS BUTLER<br>APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

The Sebastian County Circuit Court granted judgment on September 25, 2013, to appellee Karla Butler in the amount of $52,471.99 for arrearages in alimony, insurance payments, and child support; denied appellant's request for a reduction in alimony and claim for offset; and found appellant in contempt, ordering him to comply within six months or be incarcerated. On appeal, appellant argues that the trial court erred (1) by finding him in contempt, (2) in its analysis of a material change in circumstances, (3) in its analysis of appellant's claim for offset, and (4) in applying unclean hands to the offset analysis. We affirm.

I. *Procedural History*

Appellant filed for divorce on October 10, 2007, and appellee counterclaimed, asking for custody of their two children and for appellant to be responsible for all marital debt. By temporary order of July 14, 2008, appellant was ordered to pay $2500 in alimony and child

SLIP OPINION

support, as well as certain bills, including the mortgage, homeowner's insurance, and medical insurance for the children.

Appellant filed a motion for reconsideration on July 23, 2008, claiming that he had presented testimony that he makes no income; however, if the circuit court had used the 2007 income in setting support, then the amount ordered was above the amount listed in Administrative Order No. 10.

An amended temporary order was filed on September 15, 2008, ordering appellant to pay $2500 in temporary alimony and child support effective July 1, 2008, with $1666.67 designated as child support and $833.33 as alimony. He was further ordered to continue paying the bills. The circuit court noted that, regardless of appellant's testimony, he had continued to pay alimony and the bills as ordered.

On September 19, 2008, the Child Support Enforcement Unit (CSEU) intervened and filed a motion for contempt against appellant claiming that he was in arrears in child support in the amount of $5000.01. On September 29, 2008, CSEU filed a motion to modify, claiming that appellant had been ordered to pay $2500 per month in child support, and asked for a wage-assignment order. This motion was modified on October 6, 2008, to reflect the designated child-support obligation of $1667.67.[1]

On December 29, 2008, the circuit court ordered that the payments continue as ordered, plus an additional $500 for "any" arrearage. The court found that appellant was

---

[1]We recognize the one-dollar difference in the amount as set forth in the September 15, 2008 order and the October 6, 2008 motion.

SLIP OPINION

current on child support through November 30, 2008. Further, the court ordered that the payments to appellee be made directly to her by wire transfer. The court also ordered that any "payor" deduct child-support payments from appellant's pay.

On June 11, 2009, CSEU filed a motion for citation for a child-support arrearage of $7500 since December 20, 2008. A hearing was set for September 22, 2009, and on that day, a decree was filed granting the parties a divorce and awarding custody to appellee. A support and property-settlement agreement was attached. The parties agreed that appellant would pay $1282 per month child support beginning July 2009. The child-support amount was to decrease to $894 monthly on August 16, 2009, when the oldest child turned eighteen. Alimony was set at $1000 per month beginning July 2009 through May 2023. They agreed that any modification would be based on a substantial change in appellant's income before June 30, 2012. Appellant was also to reimburse appellee $250 per month for medical insurance.

On January 15, 2010, appellant's lawyer filed a motion to withdraw because his client had not paid his fees or those of the ad litem, who had been appointed on January 8, 2009. An order was entered allowing withdrawal on January 20, 2010.

On January 28, 2010, appellee filed a motion for contempt for appellant's failure to pay bills in violation of the September 15, 2008 amended temporary order. Included were the internet bill, real-estate taxes for 2008, medical insurance, and alimony for April, May, and June 2009. Further, appellee alleged that she was forced to pay car and mortgage payments and insurance on both. She also claimed that appellant had failed to pay the child support,

SLIP OPINION

medical insurance, and alimony payments as called for in the property settlement and decree. On February 18, 2010, the attorney ad litem filed a contempt motion against appellant for nonpayment of fees in the amount of $1239.58.

On April 22, 2010, appellant filed a countermotion for abatement of alimony, reduction in child support, and for contempt, claiming a substantial change in his income. He alleged that appellee contacted a third party to complain online about his company. Also, he alleged that she had thwarted visitation and communication with his child.

An agreed order was filed September 23, 2010, wherein appellant was to make an immediate payment of $15,648 to CSEU for child support and insurance from July 2009 through July 2010. He was also to pay $3000 in outstanding attorney's fees and $1240 to the attorney ad litem. In exchange, he was not to begin alimony payments until May 2011, when he would then owe for twenty-two months of alimony. The agreement was for him to pay an extra $1000 per month at that time, making his payments $2000 per month from May 2011 through February 2013. In March 2013, he would go back to paying $1000 per month through May 2023. All previous orders not conflicting with the new agreement stayed in effect. Appellee preserved her argument regarding alimony for April–June 2009.

On May 22, 2012, appellee filed a contempt petition alleging that appellant was behind $4300 in child support, $3000 in insurance, and $44,000 in alimony. On August 27, 2012, appellant filed a counterclaim alleging that he was entitled to a modification in alimony and asked for a decrease in child support as well. He also asked for a set-off against moneys owed him for repairs he had made to the marital home.

After a hearing on July 9, 2013, an order was filed September 25, 2013, denying appellant's motion for reduction in alimony and disallowing any offset. Judgment was awarded to appellee in the amount of $52,471.99. The circuit court noted that appellant had unclean hands for not paying alimony and child support during the time appellee occupied the home. The circuit court found as follows:

> The Plaintiff is ordered and directed to comply with all Orders in the future and that if the judgment is not satisfied within a reasonable period of time not to exceed six (6) months from the date this Order is entered, a Body Attachment shall issue and the Plaintiff shall be incarcerated in the Sebastian County Detention Center until such time as he brings current all of his obligations under the previous Order and current Orders of this Court.

This appeal timely followed.

## II. *Contempt*

Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Ward v. Ward*, 2014 Ark. App. 261, 434 S.W.3d 923. Because appellant was held in civil contempt, we apply our standard of review for civil contempt, which is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Id*.

Appellee claims that because appellant has not been imprisoned as yet for his failure to comply, the order is not final and appealable. Appellant replies that Ark. R. App. P.–Civ. 2(a)(13) (2014) addresses this issue and that the order is appealable. Rule 2(a)(13) allows that an appeal may be taken from a circuit court to the Arkansas Supreme Court from a civil-contempt order, which imposes a sanction and constitutes the final disposition of the contempt matter.

SLIP OPINION

In *Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992), our supreme court stated that suspension of a sentence for contempt is in effect a complete remission of the contempt. However, the court noted that when part of the sentence is suspended, the portion that was suspended is remitted, but the remaining portion of the contempt still exists. *Henry*, 309 Ark. at 342, 832 S.W.2d at 470. The supreme court held that a partial suspension of a contempt sentence did not render the appeal moot. *Id.* The supreme court noted that a conditional suspension was a "mere postponement of the contempt rather than a remission." *Id.* Here, because the circuit court issued the judgment and found appellant in contempt, sentencing him to jail time if he did not satisfy the judgment within six months from the date of the order, we hold that there was a postponement rather than a remission of the contempt and a final, appealable order resulted.

Appellant argues that his inability to pay is a defense to contempt for his failure to pay alimony. *Griffith v. Griffith*, 225 Ark. 487, 283 S.W.2d 340 (1955) (In a contempt proceeding to coerce the payment of money, inability to pay is a complete defense against enforcing payment by imprisonment.). Appellant points to his testimony that he was working twelve-hour days and did not have the money to pay it. He contends that the circuit court made no findings on this issue. He claims that the undisputed evidence was that he could not comply with the terms of the decree and settlement agreement. He argues that his obligations were $27,000 more than his income as reflected in tax years 2009–2011. He admits that he agreed to the first two settlement orders "for reasons that are highly unclear from the record," but

claims that there is "no evidence that he has ever had even the prospective capacity to pay for either of them."

He argues that if the contempt order is carried out, it would ensure that he would never be able to pay his alimony because he owns his own company and generates the income that he does have. If he were jailed, therefore, he contends that he would be financially wiped out.

Appellee contends that the circuit court could see that appellant stopped paying child support when the younger reached eighteen, but did not pay anything toward his other obligations thereafter, even though his child-support obligation had abated completely. She reasons that appellant knew that failure to pay child support is a criminal matter, but failure to pay alimony is not. We hold that the circuit court's contempt finding was not clearly against the preponderance of the evidence given appellant's willingness to enter into agreed orders, his failure to pay, and the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227.

### III. *Change in Circumstances*

Modification of an award of alimony must be based on a change of circumstances of the parties. *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). The burden of showing a change of circumstances is always on the party seeking the change in the amount of alimony. *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003).

The primary factors to be considered in changing an award of alimony are the needs of one party and the ability of the other party to pay. *Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007). Secondary factors that may also be considered include (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the income, both current and anticipated, of both parties; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of each party's discretionary income; (7) earning ability and capacity of both parties; (8) the property awarded to each party; (9) the disposition of the homestead or jointly owned property; (10) the condition of health and medical needs of the parties; (11) the duration of the marriage. *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004). Each case is to be judged upon its own facts. *Id*. Discretion is vested in the circuit court, and we will not reverse absent an abuse of discretion. *Id*.

Appellant argues that the circuit court failed to consider the parties' material change of circumstances. He contends that the circuit court made no findings and took no notice of his inability to pay. The court determined that his income had not changed between entry of the 2010 settlement agreement and the hearing on his motion for reduction. He agrees that in that time period, his income did not change. However, he argues that other circumstances did: (1) He took on additional debt to comply with part of prior orders. He borrowed money against his car and from family, and incurred a debt of $98,000 against unpaid portions of the mortgage on the house, and the failure of a prior business that he owes $2000 per month on; (2) Appellee was able to put ten percent down on a new house and has

8

SLIP OPINION

had a $6,000 annual-pay increase; (3) The parties contemplated an increase in his income when the 2010 settlement was entered, or they would not have agreed to make him pay more than his available income. He offers to pay $250 per month in alimony.

Appellee argues that the alimony order of 2010 is not modifiable. First, appellant filed his motion after the June 20, 2012 deadline; second, he had an opportunity in 2010 to modify his obligations and did not do so; and third, his income has not decreased since the last order filed in September 2010.

She argues that it was appellant's duty to make clear the reasons for the first two settlement orders. She argues that he cannot vaguely allude to possible improvidence and demand that she surrender what she contracted to receive. Appellant contracted to pay the alimony, and it is not modifiable outside the parameters of the contract. The contract allowed modification based on his income. However, appellant admitted that his income had not changed. We hold that there was no abuse of discretion in finding that appellant failed to meet his burden of proof and denying appellant's request for a modification in alimony.

IV. *Offset*

In *Duncan v. Duncan*, 2011 Ark. 348, at 8, 383 S.W.3d 833, 838, our supreme court held as follows:

> Although equity cases are reviewed de novo, and the whole case is open for review, the findings of fact by the circuit judge in equity cases are not to be set aside unless clearly erroneous. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009); *see also* Ark. R. Civ. P. 52(a) (2011). In determining whether the circuit judge clearly erred with regard to a factual finding, the appellate court may look to the whole record to reach that decision. *Stehle*, 375 Ark. at 455, 291 S.W.3d at 580. A finding of fact is clearly erroneous when the reviewing court, based on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* Therefore, "a

9

complete review of the evidence and record may take place as part of the appellate review to determine whether the trial court clearly erred in either making a finding of fact or in failing to do so." *Id.* at 456, 291 S.W.3d at 580.

Appellant contends that the original divorce-settlement agreement provided that he was to make payments to his stepmother for the continued use of the residence at 6512 Park Avenue. However, appellee lived there and was to maintain the residence in good condition and repair. He argues that she did not keep up her end of the contract and that some issues regarding the condition of the house came up in the divorce, and the contract resolved them, making her responsible for some unrepaired items in the house. These items included gutters, roof and skylight, fence, and damage to the wall. He complains about the pool repairs that appellee had made that left damage in the amount of $10,000; that she left with fixtures to the house, including the dishwasher, light fixtures, and ceiling fans; that he would have to fix the furnace because appellee did not maintain it; and that he had to have trash bins brought in to clean up trash that appellee left.

He argues that even if the circuit court found appellee's version of events more credible, the decree provided that she would keep things in good condition and repair, and this was not done. He argues, therefore, that credibility is not at issue. He claims that, had she received her alimony and been able to pay for it, she would have been responsible for it then, so she should be responsible for it now.

Appellee claims that appellant's plea for set-off fails for lack of sufficient evidence. The circuit court wrote:

> 10. With respect to the plaintiff's request for repairs made and repairs to be made, the court notes that a number of these items include airline tickets, hotel expenses, rental

car expenses, which are clearly not repairs to the Arkansas home and furthermore, the evidence is conflicting as to the condition of the real estate and home at the time the parties separated and there was no independent witness or photograph introduced into evidence depicting the conditions at separation or the time of the divorce. As mentioned above, under the Agreement that the Plaintiff made with his stepmother, he was to be solely responsible for any repairs, upkeep and maintenance on the home; therefore, he would have been responsible for any of the upkeep, care and maintenance up until the time of separation. Again, there is no evidence of the condition of the real estate and home at the time of separation. The evidence is clear that the carpet was original, the fence was ill constructed from the onset, there was no irrigation system to ensure the life of the existing original landscaping and the heat and air-conditioning was in ill repair while the Plaintiff resided in the home. Therefore, based on all of the above, the Court denies the Plaintiff's claim for offset against the alimony for the mortgage payments, repairs paid and repairs required for lack of proof and lack of evidence.

Appellee argues that the evidence was that the swimming pool needed repair before the divorce, but that appellant had let the insurance lapse and that the necessary repairs were not made. Appellant cannot now seek an offset for those repairs. Appellee refers to other testimony regarding the harsh summer and the conditions of the original carpet and gutters.

In reviewing equity cases, appellate courts conduct a de novo review of the record and do not reverse a finding by the circuit court unless it is clearly erroneous or clearly against the preponderance of the evidence. *Chastain v. Chastain*, 2012 Ark. App. 73, 388 S.W.3d 495. We also give due deference to the circuit court in judging the credibility of the witnesses. *Id.* Given our standard of review and the circuit court's evident evaluation of the witness's credibility, we hold that there was no clear error in the circuit court's order denying an offset.

V. *Unclean Hands*

The clean-hands doctrine bars relief to those who are guilty of improper conduct in the matter in which they seek relief. *Nationsbanc Mtg. Corp. v. Hopkins*, 87 Ark. App. 297, 190 S.W.3d 299 (2004).

Appellant contends that this doctrine does not apply to him because he was unable to pay his alimony and because his actions were not driven by disobedience. Appellee argues that appellant came to court with unclean hands, and he should have shown compliance with the court's orders or at least that he tried to pay something. She claims that his debts in business and to his mother should not be above the debt that he owes her. She points out that appellant did not even pay the $250 he now offers as a show of good faith. Again, giving due deference to the circuit court's judgment of the credibility of the witnesses, we hold that there was no clear error in the circuit court's order.

Affirmed.

WALMSLEY, GLOVER, WHITEAKER AND VAUGHT, JJ., agree.

PITTMAN, J., dissents.

**JOHN MAUZY PITTMAN, Judge, dissenting.** This case should be dismissed because the order of contempt is not final. Although it is true that Ark. R. App. P.–Civ. 2(a)(13) permits an appeal from a civil contempt order that imposes a sanction, this is so only where such an order constitutes the final disposition of the contempt matter. The order appealed is not a final disposition of the contempt matter in this case. The order provides:

> [T]he Court finds Plaintiff in contempt and awards the Defendant judgment in the sum set forth above. The Plaintiff is ordered and directed to comply with all Orders

12

in the future and that if the judgment is not satisfied within a reasonable period of time not to exceed six (6) months from the date this Order is entered, a Body Attachment shall issue and Plaintiff shall be incarcerated in the Sebastian County Detention Center until such time as he brings current all of his obligations under the previous orders and current orders of this Court.

The lack of finality is demonstrated by our inability to decide the question argued. Appellant claims that he *will* not be able to pay these obligations because of his financial situation; he asks us to make a finding regarding his ability to pay *in futuro* and to reverse the trial court's finding of contempt based upon that finding. We cannot do so. First, it is for the trial court, not the appellate court, to make initial findings regarding a contemnor's ability to purge the contempt by payment. Second, the condition that would give rise to the sanction necessary to finality of this order—failure to pay—has not yet occurred.

Appellant argues that this is in fact a final order by reference to the 2010 Reporter's Notes to Rule 2 that state "when a contempt sanction is suspended conditionally for a specific period of time, our supreme court has concluded that the suspension amounts to a postponement of the contempt rather than a remission," and that "[a]n order with postponed sanctions is appealable." However, to consider the order in the present case as containing postponed sanctions, we would have to construe the trial court's order as providing for immediate imprisonment upon failure to pay, without regard to whether the failure to pay was willful and without a hearing to determine ability to pay. Such a construction would assume that the trial court intended to violate appellant's due-process rights by depriving him of a hearing on the issue of willfulness before imprisonment is imposed, *Griffith v. Griffith*, 225 Ark. 487, 283 S.W.2d 340 (1955), and would be contrary to the presumption of regularity

that attaches to all orders issued by courts of general jurisdiction. *See American States Insurance Co. v. Williams*, 2010 Ark. App. 840; *see generally* 31A C.J.S. *Evidence* § 234 (2014).

Because I would dismiss for lack of a final order, I respectfully dissent.

*Jeremy B. Lowrey*, for appellant.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellee.