Cite as 2015 Ark. App. 715

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–373

| | |
|---|---|
| | **Opinion Delivered** December 16, 2015 |
| TONY R. WILLIAMS<br>APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. DR2006-496] |
| V. | |
| CHERYL WILLIAMS ARNOLD<br>APPELLEE | HONORABLE WILL FELAND, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Tony R. Williams appeals a December 2014 Lonoke County Circuit Court order awarding his ex-wife, Cheryl Williams Arnold, $44,186 against him. We affirm.

I. *Background*

The parties were divorced in 2007 by a decree awarding Arnold 32.5% of Williams's military retirement. The pertinent part of the divorce decree (paragraph i) states:

> The Defendant [Williams] is retired from the United States military after having been in the military for twenty years. The parties were married for thirteen of the said years that Defendant was in the military. The parties agree and stipulate that the Plaintiff [Arnold] is entitled to permanent receipt of said formula pursuant to the military retirement pay requirements for said retirement benefits. The Plaintiff shall be and is hereby awarded 13/20ths (65%) of fifty percent of the Defendant's military retirement which equates to 32.5% of the Defendant's retirement income. The Defendant and the Plaintiff shall cooperate together so as to ensure that the Plaintiff receives the proper amount directly from the military payment center.

SLIP OPINION

It is undisputed that Arnold never received the 32.5% of the military-retirement benefits provided for in the parties' divorce decree. She did not receive her portion of the retirement benefits directly from the government, nor did she receive her portion from Williams.

In 2014, almost seven years after the divorce decree was entered, Arnold filed a motion for contempt. She alleged that Williams had lied to her, leading her to believe that she was not entitled to any retirement money because she had remarried. Arnold also asked the court to hold Williams in contempt because, for seven years, he had failed to pay any of the retirement money owed to her and had not cooperated to ensure that she be paid the proper amount directly from the military payment center, as the divorce decree required. Williams asserted laches, unclean hands, and estoppel.

II. *Contempt Hearing*

The circuit court held a hearing on Arnold's contempt motion where the parties held markedly different views on what had happened over the past seven years regarding Arnold's attempts to get the retirement money.

Arnold testified that she had spoken with Williams on the phone "a couple of times" about getting the retirement payments and that Williams told her, "Well, you went out and remarried. You're not eligible for anything." Arnold also told the court that she went to the Little Rock Air Force Base several times from 2008 to 2011 but received no answers as to why she was not receiving her portion of the retirement benefits. Arnold explained that in 2014 she was at the VA Medical Center, ran into another veteran, and determined that she was eligible to receive the retirement benefits. Plaintiff's Exhibit No. 2 is a June 2014

letter from the Defense Finance and Accounting Service (DFAS) stating that it had received Arnold's application for payment of a portion of the retirement pay of Tony Williams, but that the application could not be approved because Arnold had not submitted a marriage certificate showing that she was married to her former spouse for at least ten years.

On cross-examination, Arnold admitted that she had nothing in writing to show that she had requested Williams's cooperation in getting the retirement benefits. On further redirect examination, Arnold said that she sent a certified letter to Williams in 2014 before filing her contempt motion to try "to avoid this expense and hassle of having to come to court" and that Williams never responded to the certified letter.

Williams testified that he had been getting the entire retirement amount (more than $130,000) since the divorce, that he knew Arnold had not received any of the retirement benefits, that he never sent any money to Arnold, and that he used her part of the retirement money to live on since he was on a "fixed budget." He explained to the court that he had contacted the retirement center at Fort Hood and they had told him that "it was up to her and her attorney to get it started[.]" Williams denied telling Arnold that she was not entitled to retirement benefits because she had remarried.

Toward the end of the hearing, the parties and the court started to discuss the dollar amount of the retirement benefits that were owed to Arnold. Williams told the circuit court:

> At one point, I had talked to the legal office at—like, within 30 days or so of the divorce, and the legal office at Fort Hood told me there is no way to figure this up, DFAS has to do it, for me to talk to the retirement section. That's when I talked to them. They told me that I have nothing to do with it. Her and her attorney do all the paperwork and it's up to them.

SLIP OPINION

When questioned by his attorney, Williams testified that he and Arnold had brief contact over the phone right after the divorce and that Arnold had hung up on him. According to Williams, he never received any correspondence or documentation from Arnold during the past seven years asking him to help her get the retirement benefits. Williams stated that he and Arnold "don't communicate very well" and "when she is not contacting me, I'm like, Okay. Everything must be fine with her." Williams stated that it would be a hardship on him to repay the retirement benefits he received because he lives on a limited income based on his military retirement and disability and he could not go try to earn extra money elsewhere.

At the close of the testimony, the circuit court stated that it was "particularly interested" in hearing "why Mr. Williams shouldn't be held in contempt of court for knowingly receiving the entire retirement." Williams's attorney responded in part that the decree said "cooperation" and said, "Your Honor, we affirmatively pled laches. We affirmatively pled unclean hands. She could have done it herself at any point during this entire seven years. The Internet is a great resource for information. DFAS is available. She had an attorney in the divorce case." He also argued that the divorce decree did not state "any affirmative duty" to make sure that Arnold got her share.

### III. *Court's Ruling*

In its oral ruling, the court stated that it was "incredulous" at Williams's testimony that it was going to be a hardship if he had to repay the portion of the retirement benefits to Arnold that he had received for the past seven years because Williams was "knowingly receiving 100 percent of the retirement." The court reasoned that Arnold had a vested

property right, that Williams was in contempt of court, that there was "no ambiguity" that Williams "made no effort whatsoever until the mechanism to be established for her to receive it directly to remit any portion of that to her[.]"

The court entered a series of three written orders crystallizing its oral ruling. The first order was entered on 15 September 2014. In it, the court wrote that Williams was "in willful contempt for his failure to ensure that [Arnold] received 32.5% of his military retirement as agreed and ordered in the Divorce Decree." The order also stated, "The Court is deferring a decision for 45 days to allow time for DFAS to provide the Court with the exact amount of retirement received by the Defendant from July 10, 2007 until the present."

The court entered the second order on 5 December 2014 and found that Williams had received $134,044 in retirement benefits since the divorce, so Arnold was entitled to $43,564 as her 32.5% share of the benefits. The second court order contemplated a third court order (the "supplemental order"). The forthcoming supplemental order would allow Williams to have a "credit offset in the amount of the taxes that would have been paid" had Arnold "received her share of retirement as awarded in the Decree."

Fifteen days later, on December 30, the court entered the supplemental order and reduced the dollar amount Williams owed Arnold to a judgment amount. The court also issued an amortization schedule and ordered Williams to make monthly payments until his debt to Arnold was satisfied.

Williams filed a timely notice of appeal from the supplemental order.

IV. *Contempt*

Williams argues that the circuit court wrongly interpreted the parties' divorce decree and that the court erred in holding him in contempt. Williams asserts that "the Decree only stated there was cooperation required between the parties" and that "payments for Appellee are specifically contemplated to come from the military pay center *only* and are not otherwise directed to come from Appellant in the absence of payment from the military pay center." For reasons we will explain below, we disagree with Williams's arguments.

A. The Law

We review divorce cases de novo on the record and do not reverse a circuit court's findings of fact unless they are clearly erroneous. *Lamb v. Rodriguez*, 2015 Ark. App. 248. Findings of fact made by the circuit court in a divorce case will be reviewed by this court in the light most favorable to the appellee, and we will defer to the superior position of the circuit court to judge the credibility of witnesses. *Id.* But a circuit court's conclusion on a question of law is given no deference on appeal. *Id.*

When interpreting a circuit court order, we look to the pleadings, "the language in which the order is couched," and whether the evidence supports the ruling. *Allen v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 608, at 9, 377 S.W.3d 491, 496–97. A stipulation that is incorporated into a court order is enforceable by contempt proceedings. *See Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 666 F. Supp. 159 (E.D. Ark. 1987).

Contempt is divided into criminal contempt and civil contempt. *Ward v. Ward*, 2014 Ark. App. 261, 434 S.W.3d 923. Criminal contempt preserves the power of the court,

vindicates its dignity, and punishes those who disobey its orders. *Id.* Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* To establish contempt, there must be willful disobedience of a valid order of a court. *Holifield v. Mullenax Fin. & Tax Advisory Grp., Inc.*, 2009 Ark. App. 280, 307 S.W.3d 608. Contempt is a matter between the judge and the litigant, not between two opposing litigants. *Id.* Before a person can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id.*

Williams was held in civil contempt by the circuit court. We therefore review whether the circuit court's contempt finding is clearly against the preponderance of the evidence. *Ward*, *supra*.

## B. Our Discussion

To analyze whether the court's contempt finding is clearly against the preponderance of the evidence, we start with the court's order. Is it definite in its terms, clear as to what duties it imposes, and express in its commands regarding Arnold receiving her portion of the retirement benefits? Here, the court order incorporated the parties' stipulation that they would "cooperate together so as to ensure that [Arnold] receives the proper amount directly from the military payment center." Contrary to Williams's assertion, the language in the court order does not only state "cooperation." It also has the language "so as to ensure." An *Oxford English Dictionary* definition of "to ensure" is: "[t]o make (a thing) sure to or for a person; to secure." 5 *Oxford English Dictionary* 284 (2d ed. 1989). We conclude that the court order was express, clear, and definite enough in its requirements that both parties,

including Williams, were to help secure and make certain Arnold received her portion of the retirement benefits.

Williams is correct that Arnold did not seem to comply with the statutory process for receiving her portion of Williams's military-retirement benefits directly from the military payment center. The Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408 (2012), establishes a procedure for an ex-spouse to receive his or her portion of military-retirement benefits directly from the federal government. Arnold did not submit a completed application to receive her portion of the retirement benefits directly from the government until after she had determined she was eligible for them after speaking to another veteran. But what is also undisputed is that Williams was already retired when the parties divorced and that he kept, and spent, all the retirement benefits he received for seven years until he was chastised in court. And nothing in the record shows that Williams sought legal advice from counsel or asked the court what to do about the bureaucratic red tape.

We hold that the circuit court did not err in holding Williams in contempt, because, on this record, it was not clearly against the preponderance of the evidence that Williams willfully disobeyed a valid court order that he "cooperate together so as to ensure" Arnold received her portion of the retirement benefits. While the divorce decree contemplated Arnold receiving "the proper amount directly from the military payment center," this phrase does not negate that Williams's obligation to help "ensure" Arnold received the proper amount of his retirement benefits. Nothing in the decree required Arnold to collect her share of the benefits directly from the government; it just assumed that she probably would. Nor does the divorce decree prohibit the court from ordering Williams to repay Arnold for

benefits he knowingly kept and spent. The divorce decree stated that Arnold was entitled to her 32.5% share of Williams's military retirement, and the circuit court could properly enforce its decree to ensure that it was delivered to her. *See Lewis v. Lewis*, 87 Ark. App. 30, 185 S.W.3d 621 (2004). In this case, after weighing all the evidence, the circuit court concluded that Williams "knowingly received [Arnold's] part of the retirement and expended [the] same." We cannot say that this finding is clearly against the preponderance of the evidence.

## V. *Laches*

Williams argues next that the circuit court erred when it did not apply "the doctrine of laches to the payment of military retirement benefits dating back to the entry of the final divorce decree." Williams raised laches as an affirmative defense, and the circuit court ruled that laches did not apply given the testimony.

The doctrine of laches is based on equitable principles that consider whether one party has detrimentally relied on another party's conduct. *Ark. Cnty. v. Desha Cnty.*, 351 Ark. 387, 392, 94 S.W.3d 888, 891 (2003). The doctrine can apply when the party against whom laches is raised (1) knew of his rights and the opportunity to assert them, (2) delayed in doing so, (3) because of the delay an adverse party has good reason to believe the rights are worthless or have been abandoned, and (4) given a change of conditions during this delay it would be unjust to the latter to permit him to assert them. *Id*. A party asserting laches must show that he or she was prejudiced from the adverse party's delay. *Id*.

We hold that the circuit court's decision to reject laches was not clearly erroneous. Here, Williams must have shown a change of conditions that would have made Arnold's

assertion of her rights under the divorce decree unjust. *See id; see also Jaramillo v. Adams*, 100 Ark. App. 335, 342, 268 S.W.3d 351, 357 (2007) (When an affirmative defense is raised, the defendant has the burden of proof.). Arnold's delay, by itself, is not enough. *See Higgins v. Higgins*, 2010 Ark. App. 71, 374 S.W.3d 56. This record supports the conclusion that Williams did not rely, to his detriment, on Arnold's delay or that it would be unjust to order him to pay her the benefits that he kept and spent. Williams was retired when the parties divorced; he was already receiving a fixed retirement income. Arnold testified that Williams lied to her about whether she could receive the benefits after she remarried. Williams admitted that he knew Arnold was supposed to get a portion of the benefits he received, did nothing to help her get the money, and spent the portion of retirement benefits that belonged to her. Given our deference to the circuit court as fact-finder and its superior ability to judge the witnesses' credibility, we find no error in the court's laches decision.

## VI. *Conclusion*

The circuit court's decision is affirmed in all respects.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Rice & Adams*, by: *Brian K. Woodruff*, for appellant.

*The Law Offices of J. Brent Standridge, P.A.*, by: *J. Brent Standridge*, for appellee.