
# ARKANSAS COURT OF APPEALS
## DIVISION I
**No.** CV-16-192

| | |
|---|---|
| RYAN GOODWIN<br><br>APPELLANT<br><br>V.<br><br>STEPHANIE GOODWIN<br><br>APPELLEE | **Opinion Delivered:** December 7, 2016<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. DR–2012-1040 (II)]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Ryan Goodwin appeals a Sebastian County Circuit Court order holding him in civil contempt and directing him to pay $45,007.96 to his former wife, Stephanie Goodwin. On appeal, Ryan argues that (1) the circuit court erred in ordering him to pay Stephanie $45,007.96 because the court had no authority under Arkansas Rule of Civil Procedure 60(c) to modify the division of property from the divorce decree more than ninety days after its entry and (2) the circuit court's finding that he failed to distribute to Stephanie her equal share of the parties' gold-coin collection was against the preponderance of the evidence. We affirm.

Ryan and Stephanie married on December 18, 2004. During their marriage, they acquired a gold-coin collection. The parties separated on September 12, 2012, and on November 20, 2012, Stephanie filed a complaint for divorce.

On November 21, 2013, the parties held depositions. Ryan testified that, "To my knowledge, there are currently 30 coins," and he agreed that they should be divided equally between him and Stephanie. On April 29, 2014, on agreement of the parties, the circuit court entered a divorce decree, which provided, in part, that the parties "shall . . . divide the gold coins equally."

On May 14, 2015, Stephanie filed motions to modify the decree and for contempt. She alleged that following the entry of the divorce decree, she discovered that Ryan had transferred or sold several coins, which resulted in an unequal division of the coins. She asked the court to order Ryan to transfer 69 gold coins to her.

On October 19, 2015, the court held a hearing on Stephanie's motions. Stephanie testified that during their marriage, she and Ryan acquired 162 gold coins. Specifically, she testified that they bought 50 Saint Gauden coins, 100 Liberty coins, one Trade Dollar coin, and a set of 11 coins for their children. She stated that during their marriage, they sold between 12 and 16 of the 162 coins; thus, she believed they had between 135 and 139 coins remaining at the time they separated and at the time she filed her divorce complaint. Stephanie explained that when they separated, Ryan changed the combination to the safe where they kept the coins and gave her only 28 or 29 coins.

During her testimony, Stephanie introduced into evidence four exhibits documenting the purchase and sale of the coins. Exhibit one is an invoice from Swiss America Trading Corp. ("Swiss America") dated March 28, 2007, which shows that Stephanie and Ryan bought 161 coins totaling $194,745. Exhibit two is a spreadsheet report that Stephanie created that shows the number of coins that she and Ryan bought and sold

during the marriage. The report indicates that between December 27, 2011, and August 15, 2012, she and Ryan sold between 12 and 16 of the 162 coins. The report shows that Stephanie and Ryan sold the coins for $21,286, but it does not show the number of coins actually sold. Exhibit three is a December 19, 2011 receipt from Swiss America that shows that they sold six Liberty coins. Exhibit four is a portfolio from Swiss America that shows that on July 18, 2007, Stephanie and Ryan purchased a Trade Dollar coin.

Ryan testified that he did not know how many coins he and Stephanie owned at the time they separated but guessed around 70 coins. He explained that during the marriage, he sold around 70 coins at gun shows and coin shows without Stephanie's knowledge. However, he offered no evidence of proceeds from those sales. He stated that when Stephanie filed for a divorce, he moved the remaining coins from their safe and safe-deposit box to his family's and friends' houses. Ryan denied withholding any coins. He stated that he gave Stephanie half of the coins they owned at the time of their separation and that Stephanie never complained to him about the number she received until she filed the current motions.

Following Ryan's testimony, Stephanie's attorney recalled Stephanie. She testified that on December 19, 2014, she informed Ryan that she believed he had withheld coins and then repeatedly requested him to distribute her share. She had no knowledge that Ryan had sold additional coins outside of Swiss America and pointed out that they should have had substantial cash deposits after the sales, which they did not.

Following the hearing, on November 6, 2015, the court entered an order holding Ryan in civil contempt and directing him to pay Stephanie $45,007.96. The court found

that the parties possessed 129 coins at the time of their separation, not including the children's coins, and that Ryan failed to distribute half of the coins to Stephanie as provided in their divorce decree. The court found that Stephanie had received only 29 coins and that the $45,007.96 represented the value of the 35.5 remaining coins.[1] The court found Stephanie's "testimony . . . more credible than Ryan Goodwin's testimony based on his demeanor, varying accounts as to the number and whereabouts of the gold coins . . . and contradictions with his November 2013 deposition." The court also found that "the documentary evidence support[ed] Stephanie Goodwin's testimony and version of events." Following the entry of the court's order, Ryan filed his notice of appeal.

Ryan first argues that the circuit court erred in ordering him to pay Stephanie $45,007.96 because the court had no authority under Arkansas Rule of Civil Procedure 60(c) to modify the division of property from the divorce decree more than ninety days after its entry. We find Ryan's argument meritless. The court did not modify the decree; rather, the court held Ryan in civil contempt for failing to distribute to Stephanie her equal share of the gold coins as set forth in the decree. Accordingly, we reject Ryan's argument.

Ryan next argues that the court's finding that he failed to distribute to Stephanie her equal share of the coins was against the preponderance of the evidence. He concedes that the decree provided that the coins be divided equally and recognizes that he and Stephanie acquired around 161 coins during their marriage, which included the children's coins.

---

[1]The court derived a per-coin average valuation of $1,267.83 based on the values reflected in Stephanie's documentary evidence.

However, he asserts that he sold "roughly 70" coins during the marriage and that Stephanie received her share of the remaining coins at the time of their divorce.

We will not reverse a circuit court's finding of civil contempt unless it is clearly against the preponderance of the evidence. *Williams v. Arnold*, 2015 Ark. App. 715, 479 S.W.3d 56. A finding is clearly against the preponderance of the evidence if, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Catt v. Catt*, 2014 Ark. App. 616. In our review, we defer to the superior position of the circuit judge to determine the credibility of witnesses and the weight to be given their testimony. *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15.

We hold that the circuit court's finding that Ryan failed to distribute to Stephanie her equal share of the coins was not clearly against the preponderance of the evidence. Stephanie presented evidence that she and Ryan acquired 162 coins during the marriage, that 11 coins were for the children, and that they sold between 12 and 16 coins during the marriage; yet, she received only 29 coins when they divorced. Ryan asserts that this evidence is insufficient because the court erroneously ignored his testimony that he sold 70 additional coins during the marriage. However, Ryan offered no evidence reflecting the sale of any coins or the disposition of any proceeds, and the circuit court specifically found Stephanie's testimony more credible than Ryan's testimony. Accordingly, we hold that the court's finding was not clearly against the preponderance of the evidence.[2]

---

[2]Ryan also argues that the court erred in determining the value of the coins because the parties presented no evidence concerning their worth. However, Stephanie's

 

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Gean, Gean & Gean*, by: *Roy Gean III*, for appellant.

*Kevin L. Hickey*, for appellee.

---

documentary evidence showed the amounts for which they bought and sold coins, and the court specifically stated in its order that it based its valuation on that evidence.