## WHIPPLE *v.* DRIVER.

### Opinion delivered November 3, 1919.

1   CONTRACTS — IMPOSSIBILITY OF PERFORMANCE.—Impossibility of performance of a contract sufficient to excuse the non-performance upon the part of either party means an impossibility consisting on the nature of the thing to be done, and not in the inability of the party to do it, and it must be shown that the thing required under the contract can not be accomplished, and the burden of showing this is upon the defendant.

2.   EVIDENCE—BREACH OF CONTRACT—ACTS OF DEFENDANT.—A lessor brought an action of unlawful detainer against his tenant. At the trial testimony was introduced showing a desire by the lessor to get rid of the lessee as a tenant, and *held,* testimony that the lessor had said that the lessee had improperly avoided military service, and should have gone into the army, was admissible, not as original testimony but by way of impeaching the lessor, and showing his interest and bias.

Appeal from Craighead Circuit Court, Jonesboro District; *R. H. Dudley,* Judge; affirmed.

*Sloan & Sloan,* for appellant.

1.   Under the undisputed evidence the lease was terminated by failure of the tenant to pay the overdue rent within the three days after the service of notice. Steel & McCampbell's Digest, Ark. Ter., p. 262, § 7; Rev. Stat. Ark. Ch. 63; 4 Ark. 147; Acts 1845, p. 103, amended by Act December 3, 1846, and January 19, 1855; Ark. Civil Code, 150-155; Act December 16, 1868, § 11, par. 11; 27 Ark. 460; Act March 27, 1871, pp. 343-348.

2.   Non-payment of rent was not made basis of action until Mansfield's Digest, section 3348; Acts 1875. p. 196; Kirby & Castle's Dig., § 2, p. 6, § 3958; Kirby's Digest, § 3630; Sand. & Hill's Digest, § 444; 1 Wall. (U. S.) 274, 381, 17 Lawy. Ed., 536; 24 Cyc. 1427; 65 Ark. 521-530; 41 Cal. 360; 84 Ark. 320; 120 Am. St. 29, 51; 70 Ga. 284; 57 Ark. 301; 65 *Id.* 521; 47 S. W. 238; 53 *Id.* 567; 125 Ark. 108.

3.   The court erred in refusing to give instructions "H" and "I" for plaintiff and in giving No. 5 for defendant. 78 Ark. 574-7; 24 Cyc. 1089; 134 Ark. 588; 99 *Id.* 193; 25 Ark. 168; 55 Ark. 360.

4. The court erred in giving No. 4 of its own motion and in refusing Nos. "C" and "D" for plaintiff. 7 Ark. 123-131; Aleyn 26.

5. Bad weather conditions do not constitute impossibility of performance. Clark on Cont. (2 Ed.), p. 472; 13 C. J. 639; 1 Elliott on Cont., § 1891; 27 N. J. L. 513, 519; 72 Am. Dec. 373; 222 Mass. 530; 111 N. E. 399; 107 Me. 279; 78 Atl. 288; 87 Ore. 576; 170 Pac. 530; 1 Q. B. D. 244.

6. If bad weather conditions constitute impossibility of performance the court erred in refusing "C" and "D" for plaintiff. 95 Cal. 353; 30 Pac. 555-6; 43 Ore. 429; 73 Pac. 329-337.

7. The court erred in admitting improper testimony of J. R. Jones.

*Lamb & Frierson,* for appellee.

1. The court did not err in refusing to give appellant's requests. 59 Ark. 405; 65 *Id.* 521.

2. The instruction given at the request of appellant embodies the entire controversy between the parties, and if error was invited error, and he can not complain. 93 Ark. 472-478; 74 *Id.* 72 (49); 80 *Id.* 376; 70 *Id.* 401 (406).

3. No error in refusing "H" and "I" nor in giving No. 5 for appellee.

4. The court did not err in giving No. 4 of its own motion nor in refusing "C" and "D" for appellant.

5. There was no error in the admission of testimony. The case was fairly tried upon the merits, and no errors appear.

SMITH, J. The parties to this litigation entered into a written contract whereby Whipple, the land owner, rented to Driver, the tenant, a certain farm for the annual rental of fifteen hundred dollars, payable on November 15 of each year, and expiring with the year 1920. The contract is a very lengthy one and imposed many conditions upon the tenant, after the enumeration of all of which the following clause was inserted:

"It is further agreed that the failure of the said second party (Driver) to keep any of the covenants and conditions on his behalf herein contained shall be ground for declaration by the said first party (Whipple) of the forfeiture and termination of this lease."

The contract also provided " * * * No subsequent offer or tender of the said rental money (after failure to pay at maturity) shall suffice to restore the right of the first party to insist upon the remainder of the term of this lease."

Whipple filed a complaint in unlawful detainer on January 11, 1919, in which he alleged a failure to pay the rent when due and other grounds of forfeiture on the part of Driver. There was a trial before a jury and a verdict and judgment in Driver's favor, and Whipple has appealed.

As grounds for the reversal of the judgment it is insisted:

1. That the lease was terminated through the failure of the tenant to pay the overdue rent within three days after service of the statutory notice to quit.

2. That error was committed in giving and in refusing to give instructions dealing with the duty to repair fences.

3. That error was committed in giving and in refusing to give instructions dealing with the question of the impossibility of the performance of the contract.

4. That improper testimony was admitted.

We will discuss these assignments of error in the order stated.

The rent was not paid when due and notice to quit was served on January 7, 1919, and the balance due on rent was not paid until January 11. An instruction was asked which told the jury to find for Whipple, if they found the facts so to be, but the court declined to give it. Concession is made by counsel for Driver that the instruction was proper and should have been given, but for the fact that there was testimony amply sufficient to support a finding by the jury that the payment of the

rent when due had been waived and the question of waiver was submitted under appropriate instructions.

There was testimony that the fences were in need of repair and that in April, 1918, Driver set some grass afire which resulted in burning a considerable portion of a certain rail fence, and that Driver took the rails which did not burn and repaired other fences, and used certain rotten rails for stove wood. Concerning the fences the lease provides: ''It is further agreed that the said second party shall keep all fences around and about said lands in good repair.''

Upon this subject instructions were asked to the effect that it was Driver's duty to repair and replace the fences whether the fire was caused by his negligence or not, and that if Driver had failed to repair any of the fences such failure constitutes ground for declaring the lease terminated. There was a conflict in the testimony as to the state of repair of the exterior fences, the testimony in Driver's behalf being to the effect that they were in good repair. The rail fence which burned enclosed a pasture which appears not to have been in use as such at the time of the fire and the fence was of no value to the place at the time of its destruction. Driver testified, however, that it was his intention to repair that fence, and there was testimony that by the custom of the country these repairs were made in the winter and early spring, and Driver testified that he intended when he finished gathering his crop to make these repairs in the customary way.

Having agreed to keep these fences in repair, it was Driver's duty to do so, and the fact that portions of them may have burned without fault on his part did not relieve him from the duty of keeping them in repair. *Bradley v. Holliman,* 134 Ark. 588. But we think the court properly refused the instructions asked for the reason that they did not take into account the customs of the country and the requirements of good husbandry as to the time within which these repairs should be made; and, as the contract did not specify the time within which repairs

should be made, and an instruction given by the court exonerated Driver from a failure to immediately repair in the event only' that the destruction of the fence "did not impair the usefulness of the farm," we think no error was committed in the refusal to give the requested instructions.

Certain work had not been done within the time limited by the contract, and there was proof that certain arable land had not been cultivated, and other portions had not been properly cultivated in the manner required by the contract. In some respects these failures were admitted by Driver, but he sought to excuse his failure by showing that unfavorable weather conditions had made it impossible to cultivate all the land or to cultivate properly all of it put in cultivation.

Upon this subject the court gave the following instruction: "No. 4. The contract as entered into by and between the parties fixed their rights and liabilities, and each is required to perform it, unless performance of the contract be impossible. Impossibility of performance of a contract sufficient to excuse the non-performance upon the part of either party means an impossibility consisting in the nature of the thing to be done and not in the inability of the party to do it, and it must be shown that the thing required under the contract cannot be accomplished, and the burden of showing this is upon the defendant."

We think this is a fair and reasonably full statement of the law on the subject of the impossibility of the performance of a contract as applied to the facts of this case and that the court did not err in refusing the instructions asked by Whipple, which were to the effect that "It must be shown that the thing could not by any means be effected. Nothing short of this will excuse non-performance."

It is finally insisted that the court erred in admitting testimony to the effect that before the commission of the alleged breaches of the contract Whipple had said that Driver's claim of exemption from military service should

not have been allowed and that Driver should have been required to serve in the army. We do not agree that the admission of this testimony injected into the case the question whether Driver was a slacker as is contended by counsel for Whipple and involved a trial of that issue. It was contended on Driver's behalf that he had substantially complied with his contract and that Whipple had made captious and technical objections to the manner of its performance. It was shown that the rent Driver was required to pay was only five dollars per acre per annum and the rent of similar land had advanced to ten dollars per acre, and it was insisted that Whipple was endeavoring to find a method whereby he could get Driver off the farm. Whipple testified in his own behalf and proved to be a very material witness.

We think the testimony complained of would not have been admissible as original testimony, but that it was competent by way of impeachment of the testimony of Whipple as tending to show his bias and his interest. *McCain* v. *State,* 129 Ark. 75. Moreover, we do not think it so prejudicial as that the judgment must be reversed on account of its admission.

Finding no prejudicial error, the judgment is affirmed.