SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-12-953

| | |
|---|---|
| | **Opinion Delivered** January 22, 2014 |
| LORI ERWIN<br>APPELLANT | APPEAL FROM THE SCOTT<br>COUNTY CIRCUIT COURT<br>[NO. CV-2010-34] |
| V. | |
| SHELBY LEE FROST, INDIVIDUALLY<br>AND AS TRUSTEE OF THE DONALD<br>ROSS AND SHELBY LEE FROST<br>REVOCABLE LIVING TRUST | HONORABLE DAVID H.<br>MCCORMICK, JUDGE |
| APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Lori Erwin appeals the circuit court's denial of her request to declare that a trust created by Erwin's father and her stepmother is irrevocable. She argues that the evidence presented at trial clearly shows that her father did not intend for the trust to be revocable. We disagree and affirm the circuit court's order in this fact-heavy case.

I. *Facts*

Donald Ross Frost passed away in May 2008. In March 2010, Erwin, Frost's daughter, filed a complaint in the circuit court asking that a trust her late father and her stepmother had created, the Donald Ross and Shelby Lee Frost Revocable Living Trust, be declared irrevocable. The complaint alleged that Donald suffered from diminished capacity when the trust was executed, and that "[w]hether through scrivener's error, misunderstanding,

overreaching, undue influence, or lack of understanding by Settlor, Donald Ross Frost, the Trust executed on or about July 25, 2007 appears to be revocable up to the death of the second Settlor." The complaint alleged that this allowed Shelby Lee Frost, a successor trustee, to dispose of all properties in the trust and effectively disinherit Donald's three daughters from a previous marriage, Erwin, Rene Moreland, and Lisa Brotherton. (Donald and Shelby also had one child together, Patrice Frost.) The complaint asked the court to declare the trust irrevocable to "accomplish the obvious intent of the deceased" to care for all his children equally. Shelby Frost, individually and as the trustee of the trust, answered and denied all allegations in the complaint.

In June 2012, the court held a bench trial on the complaint. Shelby Frost testified that she and Donald were married in January 1987 and that the main reason she and Donald created the trust was that "if something happened to both of us at the same time . . . this would make it easier for the heirs to locate what we had, and to be able to find things." She testified that she and Donald wanted the trust to be revocable and that Donald intended that, if anything happened to him, she be able to enjoy the same type of life that they had enjoyed together. Shelby told the court that Donald was "adamant" that the trust be revocable. She also explained that approximately four months after Donald's death, she had exercised her right to amend the trust and changed the beneficiaries, effectively disinheriting Erwin, Rene Moreland, and Lisa Brotherton. Shelby stated that Donald "did not trust" what might happen after his death, that Erwin was involved with a lawsuit over her mother-in-law's estate at that time, and that Donald told her (Shelby) that "if the girls did not treat me right to cut them

loose." She stated that at the time they executed the trust, Donald had been in remission from mantle cell lymphoma for approximately three months. She later stated that she did not have any concerns about Donald's mental health until February 2008, when he started exhibiting some confusion.

On cross-examination, Shelby explained that before Donald passed away, his daughters began asking what was going to happen when he died and what was going to happen to certain items in the house, which she felt was inappropriate. She also testified that it was Donald's idea to have a trust and that the idea had first come up in 2004 or 2005. Regarding her amendment to the trust after Donald's death, Shelby explained that she noticed that things had been disturbed in her office, that some of her personal files had been gone through, and that Erwin had been to the bank asking for the names of the beneficiaries on Shelby and Donald's accounts. One of the daughters had made phone calls to Shelby's accountant and her physician. Shelby felt threatened and thought that they were going to try and discredit her and take charge.

Rene Moreland testified that she and Shelby had a good relationship before her father's death and that she did not know about the trust until the day prior to her father's funeral. She said that her father had told her previously that he had a will and that she and the other girls would be taken care of. She stated that since her father's death, Shelby did not want anything to do with her or the rest of the family. Moreland expressed her surprise that Shelby had disinherited her and her two sisters. On cross-examination, she said that she thought Shelby had coerced her father into creating and signing the trust.

Lori Erwin, an accountant and financial analyst, testified that her father had consulted her with regard to his financial matters (mainly stocks and investments) and had discussed his will and probate matters, but that he had never talked to her about creating a trust. In January 2007, when he first began chemotherapy treatments, he told her that he "had left everything in place the way it was prior in his will." Then, in February 2008, she had a discussion with him and other family members while he was hospitalized, which she described this way:

> And he basically was kind of really agitated. He sat up in the bed, and he looked at [Shelby], and he pointed at [Shelby], and—and he was trying to describe things, and he said, "You," and he pointed at Shelby, and he said, "and you," and he pointed at Patrice, and he pointed at me, and he said, "you—these two can't decide anything without you."

He then said there was a list of things that he wanted distributed and that the list was attached to his will. Erwin stated that they did not discuss his estate after that because he was deteriorating.

Erwin believed that her father could read and comprehend things, and that he was good with numbers, but when asked about the trust, she said that she had read it and that her father would not have understood it. She thought he signed it because he was weak, sick, and not in his right mind. She then told the court that he did not know what the word "revocable" meant because he had called her in 2007 to ask her what it meant. Erwin said that even after she explained it to him he did not understand the difference between revocable and irrevocable.

Lisa Trussell (formerly Brotherton) testified, among other things, that she was "blown away" when she found out about the trust and that she was shocked that her stepmother had

later disinherited her and her two sisters. In her opinion, her father would not have signed something knowing that it could disinherit her or her sisters.

Janie Graves, the vice president and branch manager at Chambers Bank, testified that she was familiar with Donald Frost as a customer, a member of the community, and as a fellow member on the Chamber of Commerce. She stated that he came into the bank frequently and that even after he had been diagnosed with cancer, in late 2006, there was never an instance in which she questioned his mental capacity. She testified that on 25 July 2007, she witnessed Donald and Shelby signing the trust and had no reason to question their mental capacities. On cross-examination, Graves corrected that she had actually witnessed Donald's will, which was also signed on 25 July 2007, not the trust.

The lawyer who drafted the trust testified too. Donald Goodner said that he had known the Frosts for many years and that, in 2007, he discussed an estate plan with them and recommended a trust. Goodner acknowledged some mistakes in the language of the trust; for example, Lori Erwin and Patrice Frost are listed as the first successor trustees in one section, but in another section they are listed as the first trustees. He testified that, despite any discrepancies in the trust's language, Donald and Shelby intended that both of them be a trustee, and if one died, then the other would be the sole trustee. But he did admit that a possible interpretation of the trust was that Patrice and Lori would become co-trustees with Shelby upon Donald's death. Goodner stated that he explained to Donald on more than one occasion that Shelby could revoke the trust and that Donald understood that, at his death, he was leaving his wife in charge of their property to do as she saw fit. He also said that Donald

was the one who first approached him about creating the trust.

The court heard additional testimony from numerous family members and family friends, all of whom testified that Donald Frost loved his daughters and that they could not imagine him doing anything that would allow his daughters to be disinherited. The court also heard from several witnesses who said that Donald was mentally competent during the time periods important to the trust issue. For example, Wayne Langley, a friend of Donald's, testified that Donald told him that "if his girls got out of line that he wanted them out of his trust." And Neil Joseph Pezzulo, a pastor at St. Jude's Church, testified that he had breakfast with Donald on 25 July 2007, and that Donald mentioned he was going to sign a revocable trust that day. Pezzulo believed that Donald "absolutely" understood what he was doing and that "it was going to be a revocable trust, Shelby would be the trustee, and when she's done, and that's his quote, 'When she's done, it will go to the daughters.'" When asked if Donald had mentioned that it would never get to the daughters if Shelby changed her mind, Pezzulo said that was "never any part of our conversation or his intention."

The court took the case under advisement and eventually entered an order denying Erwin's request to declare the trust irrevocable. The court found that Erwin had failed to establish that Donald either suffered from diminished capacity or was subject to undue influence and overreaching by Shelby when he executed the trust. It also found that Erwin had failed to establish that the trust should be declared irrevocable due to "scrivener's error, misunderstanding, overreaching, undue influence or lack of understanding." Erwin appealed the circuit court's order.

SLIP OPINION



II. *Analysis*

In the circuit court, Erwin had to establish her case for reformation by clear and convincing evidence; on appeal, however, we determine whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *See Akin v. First Nat'l Bank*, 25 Ark. App. 341, 758 S.W.2d 14 (1988); Ark. R. Civ. P. 52(a) (2013). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Farm Credit Midsouth, PCA v. Reece Contracting, Inc.*, 359 Ark. 267, 196 S.W.3d 488 (2004). Disputed facts and determinations of credibility are within the fact-finder's province. *Id.*

The case below turned on how the court, sitting as the finder of fact, viewed the evidence the parties presented. Even now, Erwin candidly acknowledges that "the issue on appeal involves a substantial number of facts, to which there was conflicting testimony" as to Donald's intent when he prepared and signed the trust. Erwin then provides a lengthy overview of the testimony presented at trial and argues that this testimony clearly showed that Donald did not understand and did not intend that the trust could be amended by Shelby. Erwin argues that the errors contained in the trust resulted in a mistake of fact and expression, as Donald had "placed his trust in an unqualified scrivener." For her part, Shelby responds that any evidence presented at trial of the supposed scrivener's errors was immaterial to whether the trust was intended to be revocable or irrevocable. And she points us to testimony that Donald was competent and understood legal terms like "revocable," concluding that there is "no mistake that Don Frost executed an instrument which he fully understood

7



granted Shelby Frost the right to revoke or amend the Trust after his death."

### III.  *Conclusion*

We hold that Erwin has failed to show that the circuit court's findings were clearly erroneous.  As Erwin recognizes, this case was decided on a disputed record, and we see no reason to disturb the circuit court's decision.  *See Farm Credit Midsouth, supra.*

Affirmed.

WYNNE and GLOVER, JJ., agree.

*Hatfield & Sayre*, by: *Christopher D. Brockett* and *Eugene G. Sayre*, for appellant.

*Walters, Gaston, Allison & Parker*, by: *Troy Gaston*, for appellee.