SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-301

| | | |
|---|---|---|
| JERRY DEAN CATT | APPELLANT | **Opinion Delivered** November 5, 2014 |
| V. | | APPEAL FROM THE CLAY COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. DR-2012-42] |
| DONNA LEE CATT | APPELLEE | HONORABLE BRENT DAVIS, JUDGE |
| | | AFFIRMED |

## DAVID M. GLOVER, Judge

Jerry Dean Catt appeals from the trial court's January 15, 2014 order and judgment that found him in contempt of the parties' divorce decree for failing to pay alimony to appellee, Donna Lee Catt, since April 2013 and failing to take the necessary steps to have the parties' 2010 and 2011 tax returns prepared and filed. Jerry contends: 1) the trial court erred in finding him in willful contempt, or alternatively, the 120-day jail sentence was too severe and should be modified; and 2) the hearing on the contempt petition was premature because his time to file a response had not yet expired. We affirm.

Jerry Dean Catt and Donna Lee Catt were divorced by decree entered on September 19, 2012. In pertinent part, the decree awarded alimony to Donna in the amount of $1500 a month, payable by the first of each month; found Jerry to be in contempt and awarded attorney's fees for his intentional failure to pay the temporary alimony that had been previously ordered; and ordered the parties "to take whatever steps necessary to have tax



returns prepared and filed within 60 days of the entry of the Order."

Approximately four months after the decree was entered, Donna filed a contempt petition, alleging that Jerry was delinquent in the alimony payments and attorney's fees and that he had failed to have the tax returns filed as ordered. The trial court found Jerry to be in contempt, granted judgment for the alimony owed, awarded additional attorney's fees, and sentenced Jerry to sixty days in jail, which could be purged with proof of satisfaction. He provided proof of satisfaction.

On August 22, 2013, Donna filed a second petition for contempt, contending that Jerry had failed to pay the $1500 a month in alimony and that he had failed to prepare the tax returns and file them. This petition was served on Jerry November 9, 2013, while he was an inmate at the Piggott jail. Thereafter, on November 14, 2013, Jerry and Donna appeared in the trial court for a hearing on the petition, but Jerry requested and was granted a continuance so that he could engage counsel. The trial court set a new hearing date for January 2, 2014.

On January 2, 2014, both Jerry and Donna appeared for the hearing but Jerry was still not represented by counsel. The trial court reviewed that Jerry had been served with the contempt petition on November 9, 2013, that the matter had already been continued once for Jerry to obtain counsel, and that the matter needed to be taken care of that day.

In his testimony, Jerry acknowledged that he had been ordered to pay $1500 a month in alimony and to take necessary steps to have the tax returns for 2010 and 2011 filed. He also acknowledged that he had previously been held in contempt for failure to do those things. Jerry explained that he had lost everything in the divorce, that he did not have any way to

2

pay, that his father allows him to live rent-free in the house he had originally shared with Donna, that his father also provides him with a vehicle, that he has no disability that prevents him from working, and that as of that date he owed Donna $13,796.94. He explained that he had stock in Riceland Foods for the sale of rice, that it totaled $13,903 at the time of the divorce, that it had not increased because he had not been farming, that during the marriage portions of his farming were for his dad, that his father owned all of the farmland and he rented land from his father, and that he (Jerry) had not farmed since 2010. Jerry stated that his accountant had given him a list of things needed for the taxes, that they had not yet been filed, but that they were "about completed." Jerry concluded his testimony by stating that he had farmed his whole life for what he had, and that he had nothing after the divorce, which was depressing.

Donna testified that she had not received any spousal support since the checks in April 2012 and that she was seeking to have Jerry found in contempt and judgment entered for $13,796.94 and attorney's fees. Donna stated that she had attempted in the past to meet with Jerry at the accountant's office but that Jerry never did so.

At the conclusion of the hearing, the trial court found that Jerry was in willful contempt and entered judgment in favor of Donna in the amount of $13,796.94 for alimony owed through January 2014. The court also awarded $1300 for attorney's fees in connection with the contempt matter, plus costs. Jerry was ordered to spend 120 days in jail, sixty days of which was to start immediately, with the ability to free himself from jail as soon as he paid the $13,796.94. Once released, the court provided that Jerry then had thirty days to have the

parties' tax returns filed and that if he failed to do so, the remaining sixty days of jail time were to be served.

Following the January 2, 2014 hearing, Jerry obtained counsel, and his counsel filed an answer to the contempt petition, which had already been heard at the January 2 hearing; a motion to set aside the judgment; and a notice of appeal.

For his first point of appeal, Jerry contends that he should not have been held in willful contempt, and, in the alternative, that the sanction of 120 days in jail was far too severe and should be modified. His basic contention is that his contempt could not be willful because he did not have the financial ability to pay the ordered alimony.

Civil contempt, which is what we are dealing with here, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Ward v. Ward*, 2014 Ark. App. 261, 434 S.W.3d 923. Because appellant was held in civil contempt, we apply our standard of review for civil contempt, which is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Id.* Our supreme court has said, in the civil contempt context, that "lack of ability to pay is a complete defense against enforcing payment from the defendant by imprisonment." *Ivy v. Keith*, 351 Ark. 269, 284, 92 S.W.3d 671, 680 (2002) (quoting *Griffith v. Griffith*, 225 Ark. 487, 283 S.W.2d 340 (1955)). "The court is empowered to punish the defendant by imprisonment for willful obstinancy where it shall appear that he had the means with which to comply with the decree, but it should not imprison him where he shows that he has not the pecuniary ability to comply with the decree and is in such ill health that he cannot earn enough money to do

4

so." *Id*. A finding is clearly erroneous or clearly against the preponderance of the evidence if, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Erwin v. Frost*, 2014 Ark. App. 51. Disputed facts and determinations of credibility remain within the fact finder's province. *Id*. The fact finder is not required to believe a witness's bare assertion of inability to pay. *Ivy v. Keith, supra*. Moreover, the trial court may, in its wide discretion, choose to assign much, little, or no punishment at all for the contempt citation. *Ward v. Ward, supra*.

Here, Jerry explained in his testimony that he had previously been held in contempt on the bases alleged in the current petition; that he had "lost everything in the divorce"; that he had "no way to pay it"; that he lives in the marital home the couple formerly resided in; that his father lets him live there rent-free and provides him a vehicle; that he has no disability preventing him from working; that he has not farmed since 2010; that his father owned all of the farmland; and that during his marriage he farmed for his father. He offered no explanation regarding why he was no longer farming, nor why he was not working in another capacity. The trial court fully understood that Jerry was asserting an inability to pay but found that his position lacked credibility. Credibility determinations are matters for the fact finder to decide. *Erwin v. Frost, supra*. We are not left with a definite and firm conviction that the trial court made a mistake in this case by finding that Jerry's contempt was willful. Neither are we convinced that the sanctions ordered were excessive. It was not the first time that Jerry had been before the court on allegations of contempt, and civil contempt is designed to coerce compliance with the court's order.

5

For his second point of appeal, Jerry contends that the January 2, 2014 hearing was held six days before the time expired for him to file a responsive pleading; that the trial took place before the "issues were joined"; and that the hearing and resulting judgment were therefore premature. We have concluded that these arguments were not properly preserved for our review.

A summons in this contempt matter was served on Jerry while he was in the Piggott jail. In making his argument on appeal, he relies upon the portion of the summons that provided in part: "Within 30 days after service of this summons on you (not counting the day you received it)—*or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility* in Arkansas—you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure." (Emphasis added.) He argues that the trial court acted prematurely in holding the hearing and ruling before expiration of the sixty days provided for in the language of the summons just quoted. Attached to the summons, however, was the trial court's order to appear and show cause, ordering Jerry to appear in court at "9:30 A.M. ON NOVEMBER 14, 2013, to show cause why he should not be held in contempt of the previous orders of the Court."

Jerry acknowledges that he was first notified of the contempt allegations when he was served in jail on November 9, 2013. It is not disputed that he appeared pro se at the ordered hearing on November 14, 2013, asked for the continuance, and raised no objection based on the sixty-day provision in the summons. He was granted a continuance by order of November 21, 2013, and the matter was reset for January 2, 2014. He did not raise an

objection regarding timing when he appeared pro se for the January 2, 2014 hearing. Rather, those objections were raised in a post-hearing answer and motion to set aside judgment, presumably filed together on January 8, 2014 (the motion has no caption and no file-mark), by the attorney that he finally hired. No ruling on the post-trial motion appears in the addendum. Jerry's notice of appeal was filed on January 10, 2014, before the January 15 entry of the order/judgment and before the time for any ruling on the post-hearing motion expired. The notice of appeal designates that the appeal is "from the judgment or final order in favor of Donna Catt entered in this case on January 2, 2014 [and also] from all of this Court's rulings that shaped the judgment." The notice of appeal was not amended to cover post-hearing matters. Consequently, we have determined that Jerry's arguments in this regard were waived by his pro se appearances and his failure to timely object.

Affirmed.

VAUGHT and WOOD, JJ., agree.

*C.W. Knauts*, for appellant.

*Henry Law Firm, PLC*, by: *Megan Henry*, for appellee.