SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-11

| | |
|---|---|
| JO ELLEN SERIO AND STAN SERIO<br>APPELLANTS<br><br>V.<br><br>COPELAND HOLDINGS, LLC<br>APPELLEE | Opinion Delivered: MAY 3, 2017<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT,<br>[NO. 12CV-10-147]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>REVERSED AND REMANDED |

### KENNETH S. HIXSON, Judge

This appeal arises from a foreclosure action that subsequently included, *inter alia*, a breach-of-contact complaint brought by appellee Copeland Holdings, LLC[1] against appellants Stan and Jo Serio. The litigation resulted in a partial-summary-judgment order entered in favor of Copeland against Jo Serio, individually, wherein the trial court found that Jo Serio had breached a real estate contract to sell property to Copeland. In the same order, the trial court denied the Serios' cross-motion for summary judgment filed against Copeland. After a hearing on damages, the trial court entered an order awarding $178,993 in damages against Jo Serio. A proper Rule 54(b) certificate was executed, which made these orders immediately appealable.

---

[1]Copeland Holdings, LLC's managing member is Barry Copeland, and for purposes of this opinion we will refer to the appellee and Barry Copeland as "Copeland."

In this appeal, the Serios challenge both the partial summary judgment on liability and the award of damages.[2] The Serios argue that (1) summary judgment should not have been entered in favor of Copeland pursuant to Ark. Code Ann. § 4–32–1007(a) (Repl. 2016) because Copeland, a foreign limited liability company, was not registered to transact business in Arkansas; (2) the contract upon which the judgment was based failed for various reasons, including that the Serios owned the subject property as tenants by the entirety and Stan Serio did not sign the contract, and that there was an impossibility of performance because third-party lienholders failed to consent to the sale; and (3) the damages award was excessive because the appraiser of the property admitted in her testimony that she did not consider the effects of the foreclosure and liens on the value of the property.

We agree with the Serios' argument that the partial summary judgment was erroneously entered because there was a material issue of fact as to whether Copeland was transacting business in Arkansas and thus statutorily barred from maintaining its action pursuant to Ark. Code Ann. § 4–32–1007(a), and also because the Serios established impossibility of performance as a defense to the breach-of-contract action. Therefore, we reverse.

The standard of review that we apply to cases in which summary judgment has been granted is well settled. Our court need only decide if the trial court's grant of summary

---

[2]We observe that the documents in the appellants' addendum, as well as the abstracted hearings, are not in chronological order. This makes our review of the case somewhat unwieldy. Although not technically required by our briefing rules, we have said that a chronological arrangement of the documents in the addendum is the best practice. *See Doughty v. Douglas*, 2016 Ark. App. 461, 503 S.W.3d 848. In the future, we encourage appellants' counsel to use a chronological format when submitting briefs to the appellate court.

judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Lloyd v. Pier West Prop. Owners Ass'n*, 2015 Ark. App. 487, 470 S.W.3d 293. The moving party always bears the burden of sustaining a motion for summary judgment. *Id.* All proof must be viewed in the light most favorable to the resisting party, and any doubts and inferences must be resolved against the moving party. *Id.* The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

The relevant facts are these. Stan and Jo Serio, husband and wife, purchased approximately 850 acres of property in Cleburne County in 1996. The Serios executed a promissory note and first mortgage in favor of George and Necia Yax. At some point thereafter, the Serios borrowed money from First Arkansas State and Trust and executed a promissory note and second mortgage on the property in favor of First Arkansas State and Trust. Again, at some point thereafter, the Serios had a federal tax dispute with the Department of Treasury (hereinafter referred to as the "IRS"), which resulted in a federal tax lien on the property. And, the Serios had a state tax dispute with the State of Arkansas Department of Finance and Administration that resulted in a state tax lien on the property.[3]

The Serios went into default on the Yax promissory note and first mortgage, and the Yaxes filed a complaint to foreclose on the property. The Yaxes included as defendants in

---

[3]It is unclear from the record the exact interest that the Arkansas Department of Finance and Administration was asserting, but it is not relevant for purposes of this appeal.

the foreclosure action the Serios, the second mortgagee First Arkansas Bank and Trust, and the federal tax lienholder IRS.[4]  The trial court eventually ordered the property sold at a foreclosure sale.  The Serios offered to sell part of the 850-acre tract to raise sufficient funds to satisfy all of the outstanding liens.  The trial court ordered that it be kept apprised of the foreclosure sale and any bids therein.

It is with this background that appellee Copeland entered the foreclosure litigation. Copeland, an attorney, was from Texas and he was interested in purchasing real estate in the general area of Cleburne County.  Copeland had previously established a business relationship with Cleburne County realtor Jim Broxson.  There was evidently a standing agreement between Copeland and Broxson that, in the event certain types of real estate became available for purchase, Broxson would contact Copeland and advise Copeland of the subject property.[5]  Broxson became aware of the Serio property and that it was up for sale.  Broxson forwarded this information to Copeland in Texas.  The record does not reflect whether Broxson advised his client, Copeland, that the property was subject to the first mortgage in favor of the Yaxes, the second mortgage in favor of First American Bank and Trust, or the tax lien from the IRS.  Copeland executed a real estate Offer and Acceptance on 397 of the 850 acres of the foreclosed property wherein he generally offered to buy those acres for $377,749, or $950/acre; however, the name of the seller was left blank.  Jim

---

[4]The State of Arkansas, Department of Finance and Administration, appeared as a party later in the litigation.

[5]Additional facts regarding this preexisting business relationship between Broxson and Copeland are set forth below in the analysis section of the applicability of Ark. Code Ann. § 4–32–1007(a).

Broxson testified in an affidavit that the Offer and Acceptance was issued in blank "because we simply did not know the name of the seller nor who was authorized to execute the document." The Offer and Acceptance included the following term:

Purchase Price is subject to the following conditions:

. . . .

"NEW LOAN: [The Offer is] Subject to the Property appraising for not less than the Purchase Price and Buyer's ability to obtain a loan to be secured by the Property in the amount of $337,749 [and] Financing as Follows: *Owner financing one year term at 5% with a promissory note and Deed of Trust (or comparable instrument) acceptable to Buyer.*" [Italicized sentence in handwriting.]

Clearly, Copeland's offer was subject to, and conditioned on, Copeland's ability to obtain a loan that included owner financing for one year and obtaining a Deed of Trust or other comparable instrument. The Offer and Acceptance was subsequently delivered to the Serios' foreclosure attorney. It appears from the record that either the attorney or her administrative assistant telephoned Jo Serio and advised Jo Serio that an offer had been received for 397 of the acres for $377,749, or $950/acre. While Jo Serio apparently authorized either her attorney or assistant to sign the Offer and Acceptance on her behalf, the record is undisputed that Stan Serio, as joint owner by the entirety, did not sign the Offer and Acceptance.

Over the next few weeks, the Serios' attorney attempted to obtain permission from the Yaxes and the IRS to allow the sale to proceed with the Serios owner financing the Copeland purchase price for one year. The Serios' attorney contacted the Little Rock IRS office and discovered that the IRS would require Form 14135 Application for Discharge of Property from Federal Tax Lien along with a signed copy of the offer, two appraisals, and

all other documents required by Form 14135. After working on the matter for several weeks, including discussions with Jim Broxson, the Serios were advised by the IRS that it would not allow owner financing, would not approve the Application for Discharge of Property from the Federal Tax Lien, and would not remove the tax lien. The record reflects that the Yaxes also refused to allow the Serios to owner finance the purchase. This information was forwarded to either Copeland or through his agent, Broxson.

After Copeland was advised that the Yaxes and the IRS had refused to allow the Serios to owner finance, a new series of negotiations commenced between the attorneys for the Serios and Copeland. At the end of the negotiations, the Serios' attorney requested that Copeland reduce the negotiations to writing. Copeland drafted what he referred to as an "addendum" to his Offer and Acceptance. This addendum included several new material terms, to wit:

- Copeland agreed to not require owner financing but would pay cash at closing.
- Copeland indicated that because he would be required to pay cash at closing, he was reducing the price per acre from $950/acre to $850/acre on the original 397 acres.
- Copeland would purchase an additional 77 acres at $900/acre.
- The Serios would be required to grant an access easement from the east.
- The Serios would be required to grant an access easement from the south.
- The Serios would be required to grant Copeland a First Right of Refusal on their other acreage if the Serios put it up for sale.

The Serios rejected this new offer or "addendum." The Serios did not agree on the reduced price per acre on the original 397 acres, on the additional 77 acres to be purchased, or on the granting of the easements.[6] The Serios countered with another set of terms that were

---

[6]The requested easements turned out to be over land owned by persons other than the Serios over whom the Serios had no control.

then met with a different set of terms from Copeland. The record indicates that the Serios and Copeland never agreed on the terms of the "addendum" or any subsequent offers or counteroffers and, as a matter of fact, Copeland alleged in his amended complaint that the "Serios never signed the addendum."

Because Copeland concluded he had an interest in the foreclosure property, he filed a petition to intervene in the Yax foreclosure case. Copeland simultaneously filed a complaint for specific performance against Stan and Jo Serio, alleging that the Serios were in breach of the sales contract. The trial court granted Copeland's motion to intervene. The Serios filed a motion to dismiss and a subsequent motion for summary judgment wherein they alleged, *inter alia,* that the contract was unenforceable because Stan Serio, as joint owner by the entirety, did not sign the offer and acceptance and that Jo Serio could not unilaterally sever the joint tenancy. Further, the Serios raised the defense that Copeland was a foreign limited liability company that was not authorized to do business in the state and therefore could not avail himself of the jurisdiction of the trial court to pursue a claim for damages.

While the dispute was ongoing between the Serios and Copeland, the property was sold to a third party during the subsequent foreclosure sale, and the sale was confirmed by the trial court.[7] After the sale to the third party, Copeland filed an amended complaint wherein he adopted all previous allegations and added additional claims for breach of

---

[7]The Confirmation Order indicates that the sale price was $650,000; that the first $299,833 was to be paid to the Yaxes to satisfy the first mortgage; the second $57,645 was to be paid to First Arkansas Bank and Trust to satisfy the second mortgage; the third $138,269 to be paid to the IRS to satisfy the federal tax lien, and the approximate balance of $155,000 was to be held in the registry of the court pending further orders of the court.

contract, fraud, and misrepresentation against the Serios, and added the Serios' real estate agents as new third-party defendants.[8]

Copeland then filed a motion for partial summary judgment against Jo Serio, individually, arguing that as the undersigned seller on the contract Jo Serio had warranted that she could transfer good title to the property, and that she breached the agreement by failing to consummate the sale. Copeland also alleged that Jo Serio had either actual authority to sign the document on behalf of her husband, Stan, or that she had apparent authority to do so. The Serios filed a response to Copeland's motion for partial summary judgment and their own cross-motion for summary judgment, asserting the defense of impossibility of performance because only Jo Serio had signed the contract and she could not convey title because Stan Serio had refused to sign it. The Serios also argued that the contract was impossible to perform because both the IRS and the Yaxes had refused to approve the terms of the sale.

The trial court entered an order granting Copeland's motion for partial summary judgment against Jo Serio, individually, and denying the Serios' cross-motion for summary judgment. In that order, the trial court found that Jo Serio had signed the real estate contract, warranting that she owned the property and could convey clear title, and failed to perform her obligations under the contract. The trial court further found that impossibility of performance was not a defense because Jo Serio knew of the encumbrances prior to the formation of the contract and created the situation of her breach.

---

[8]The added real-estate-agent defendants are not part of this appeal.

The Serios then filed a motion for summary judgment and to set aside the partial summary judgment. In that motion, the Serios contended that Copeland's claims should be denied because Copeland, a foreign limited liability company transacting business in Arkansas, was not registered in this state. It is undisputed that Copeland was not registered to do business in Arkansas. Arkansas Code Annotated section 4-32-1007(a) provides, "A foreign limited liability company transacting business in this state may not maintain an action, suit, or proceeding in a court of this state until it has registered in this state."

The trial court entered an order denying the Serios' motion for summary judgment and to set aside the partial summary judgment, *finding that there was a genuine issue of material fact as to whether Copeland was transacting business in Arkansas.* The trial court subsequently entered an order awarding Copeland $178,933 against Jo Serio for breach of contract.[9]

Both parties requested a Rule 54(b) certificate so the matter could be immediately appealed, and the trial court entered a revised order granting partial summary judgment to Copeland and denying the Serios' cross-motion for summary judgment.[10] That order contained a Rule 54(b) certificate, *along with the trial court's finding that Copeland was not transacting business in Arkansas* as contemplated by Ark. Code Ann. § 4-32-1007.[11] It is this order, as well as the trial court's intermediate order awarding damages, from which the Serios now appeal.

---

[9]The damages award was the difference, as found by the trial court, of the purchase price in the contract and the actual value of the property.

[10]The revised order repeated the trial court's findings from its original order granting partial summary judgment.

[11]This inconsistent finding by the trial court is further discussed below.

The Serios' first argument on appeal is that Copeland should not have been awarded a judgment because Copeland was in violation of Ark. Code Ann. § 4-32-1007. We agree that a material issue of fact existed as to whether Copeland was transacting business in this state, and therefore that Copeland was erroneously granted partial summary judgment. In the trial court's order denying the Serios' motion to set aside the partial summary judgment, the trial court itself found that there was a genuine issue of material fact as to whether Copeland was transacting business in Arkansas. The trial court was correct in this finding, but subsequently determined, erroneously and without explanation in its Rule 54(b) order, that Copeland was *not* transacting business as a matter of law.

In arguing that it was not transacting business for purposes of the above statute, Copeland relies on Ark. Code Ann. § 4-32-1008(a)(9), which provides, "The following activities of a foreign limited liability company . . . do not constitute transacting business within the meaning of this subchapter: *Owning, without more, real or personal property.*" (Emphasis added.) Copeland asserts that, because owning real property does not itself constitute transacting business, it stands to follow that neither does undertaking the steps necessary to purchase real property.

However, it is not evident from the record that Copeland was merely engaging in the ownership of property, *without more.* Before Copeland began negotiations to buy the property in this case, he had a previously established business relationship with Cleburne County realtor Jim Broxson. Broxson testified that he had been working with Copeland for a few years. He stated that he had Copeland set up on an "automatic e-mail notification," so that if there was a property meeting Copeland's criteria, information about

the property would be automatically sent to him. Copeland testified that, as a real estate agent, he checked the listings daily. Broxson was "watching for properties like this" for Copeland, and when he advised Copeland about the Serio foreclosure property, the negotiations ensued. From this testimony, a material issue of fact was created as to whether Copeland was engaged in the business of buying land for investment or profit, as opposed to *merely owning land without more* as Copeland now suggests. And if Copeland was engaged in business in Arkansas, there would be a statutory violation because Copeland was not registered in this state. Therefore, summary judgment was improper on this issue.

The Serios' next argument is that the contract upon which the judgment was based fails for multiple reasons. They contend that the Serios owned the property as tenants by the entirety and that Stan Serio did not sign the contract; that there was a fact question as to whether Jo Serio was acting as Stan's agent when she signed the contract; that Jo Serio had only negotiations and there was no final contract; and that there was an impossibility of performance because third-party lienholders refused to consent to the sale. We agree with the Serios' argument that the contract was unenforceable due to impossibility of performance, and therefore we need not discuss their remaining claims under this point.

Impossibility is a common-law contract doctrine that excuses what would otherwise be a breach of contract. *Smith v. Decatur Sch. Dist.*, 2011 Ark. App. 126. The law of impossibility has evolved into a broader and more equitable rule of impracticability. *Id.* Impracticability of performance may excuse a party from performing contractual obligations. *Id.* Prevention of performance by a government order or regulation may qualify as an

11

impracticability-of-performance defense. *Mathews v. Garner*, 25 Ark. App. 27, 751 S.W.2d 359 (1988).

The Arkansas Supreme Court has set out the standard to determine impossibility of performance:

> The burden of proving impossibility of performance, its nature and extent and causative effect rests upon the party alleging it. He must show that he took virtually every action within his power to perform his duty under the contract. It must be shown that the thing to be done cannot be effected by any means. Resolution of the question requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of fault on his part in failing to perform.

*Frigillana v. Frigillana*, 266 Ark. 296, 302−03, 584 S.W.2d 30, 33 (1979) (citations omitted). Impossibility of performance of a contract sufficient to excuse the nonperformance on the part of either party means an impossibility consisting in the nature of the thing to be done, and not in the inability of the party to do it, and it must be shown that the thing required under the contract cannot be accomplished. *Whipple v. Driver*, 140 Ark. 393, 215 S.W. 669 (1919).

Our analysis in *Smith*, *supra*, is instructive to our analysis here. In *Smith*, the Decatur School District had contracted to hire Smith as its superintendent for a term of three years. About a year after the contract was executed, the Arkansas Department of Education (ADE) determined that the district met the statutory criteria for being in fiscal distress, and ADE took control of the district. After assuming control, ADE relieved Smith from his position as superintendent. Smith sued the district for breach of contract, and the trial court granted summary judgment to the district on the basis that it was impossible for the district to perform its contractual obligations to Smith. We affirmed, noting that because ADE had

assumed management of the district, the district could not perform its contract without violating a state order. Because the district established, as a matter of law, the defense of impossibility of performance, we held that the trial court correctly granted the district summary judgment.

Turning to the facts of the instant case, the real estate contract itself, which was drafted by Copeland, expressly provided that the purchase price was subject to owner financing for one year with a promissory note and deed of trust acceptable to the buyer. It is undisputed that, *after* the contract was signed by Copeland and Jo Serio, Serio attempted to persuade the IRS to approve the owner financing and discharge its federal tax lien on the property; however, the IRS refused to do so. Similarly, the Yaxes would not agree to the owner financing and release of their first mortgage. Even assuming, arguendo, that Jo Serio was acting as Stan's agent when she signed the contract, performance of the contract became impossible by the subsequent actions of the third-party lienholders.

In finding that Jo Serio was liable for breach of contract, the trial court found that because she knew of the encumbrances prior to formation of the contract, she created the circumstances of her breach. However, we disagree. While it is true that Jo Serio knew there was a pending foreclosure action with mortgages and tax liens against the property, Copeland, an apparent real estate investor and attorney who was represented by a local realtor, had the same information available to him and nonetheless chose to propose a contract that included owner financing. Jo Serio was unaware at the time she executed the contract that owner financing would not be approved by the lienholders, and when the

lienholders subsequently made it known that the contract was disapproved, the Serios were unable to perform the contract as written by Copeland.

Specific performance will not lie where performance is impossible. *Williams v. Williams*, 2010 Ark. App. 349. A determination of impossibility of performance also negates any issue of damages for the failure to perform. *See Smith*, *supra*; *Mathews*, *supra*. In *Dennis v. Binz*, 230 Ark. 1010, 328 S.W.2d 85 (1959), our supreme court held that equity will not decree the performance of an act that requires the assent or action of a third person where it does not appear that the third person will give the required assent or performance. Because the IRS and the first mortgagee refused to give their required assents to the real estate contract at issue, the Serios established the defense of impossibility of performance, and Copeland's breach–of–contract action fails.

The Serios' remaining argument is that the damages award of $178,993 was excessive and should be reversed because the real estate appraiser failed to consider the effect of the foreclosure and liens when assessing the value of the property. However, we need not address this argument. Because we reverse the partial summary judgment, we reverse the order awarding damages as well. We remand the case for further proceedings consistent with our opinion on the outstanding issues.

Reversed and remanded.

ABRAMSON and MURPHY, JJ., agree.

*Blair Arnold* and *Robert S. Tschiemer*, for appellants.

*William Z. White*, for appellee Copeland Holdings, LLC.