2017 Ark. App. 692

**Susan DARCEY, Appellant**

v.

**David MATTHEWS, Appellee**

**No. CV–16–883**

Court of Appeals of Arkansas, DIVISION IV.

Opinion Delivered December 13, 2017

Short Law Firm, by: Lee D. Short, Little Rock, for appellant.

Taylor & Taylor Law Firm, P.A., Little Rock, by: Andrew M. Taylor and Tasha C. Taylor, for appellee.

BRANDON J. HARRISON, Judge

Susan Darcey appeals the circuit court's order deciding multiple motions for contempt and modification. She argues that the circuit court erred in (1) altering the parties' property-settlement agreement, (2) not finding David Matthews in contempt on multiple issues, and (3) awarding $750 in attorney's fees on the child-support issue. We reverse on Darcey's first argument but affirm on the remaining ones.

The parties divorced in January 2011 after a fifteen-year marriage. They have two children: ten-year-old E.M. and six-year-old C.M. Darcey was awarded primary custody of the children, and Matthews was awarded visitation in accordance with the property-settlement agreement (PSA) attached to the divorce decree. Pursuant to the PSA, Matthews agreed to pay $2,000 a month in child support, to keep the children on their current medical insurance, and to "cover all medical, dental and orthodontic expenses for the children." The PSA also provided that Darcey would be the owner and beneficiary of Matthews's USAA life insurance policy and that Matthews would continue to pay for the policy. The decree noted that the PSA "forever settles the rights and claims of each to property and other matters" and "shall have the same force and effect as this Decree and shall be enforced by further orders of the Court." The parties agreed that the PSA could be modified by mutual agreement.

In April 2014, the parties agreed to an amended PSA; the amendment provided that Matthews would apply to reinstate his lapsed USAA life insurance policy for $2 million and would transfer ownership of that policy to Darcey, who would thereaf-

ter be responsible for payment of the premiums. In the event that USAA refused to reinstate the policy, Matthews was required to apply for a new policy in the same amount and transfer that policy to Darcey. The parties agreed that the terms and conditions of the amended PSA were contractual and not modifiable by the court. The parties also agreed that "[i]f either party defaults in performing any obligation under this Amended Agreement, so that the other party is required to engage the services of an attorney to seek enforcement or relief, the defaulting party will pay all of both parties' reasonable attorney's fees, expenses, and costs incurred." An amended divorce decree recited the amended PSA verbatim and concluded that the amended PSA was "approved and incorporated, but not merged, into this Amendment to Divorce Decree."

In August 2014, the court allowed Darcey to relocate to San Diego, California with the children and entered an agreed amended visitation schedule. In December 2014, the court found Matthews in willful contempt of the previous orders and awarded Darcey unpaid medical and other related costs in the amount of $7,130.67, to be paid in installments of $150 a month. The court also reiterated its earlier order that Matthews procure a $2 million life insurance policy. The court ordered that Matthews pay $750 in attorney's fees, payable within thirty days of the order being entered.

The current round of litigation began soon after, in January 2015, when Darcey filed a motion for contempt based on Matthews's failure to pay the $750 in attorney's fees within thirty days and his failure to pay medical and pharmacy bills forwarded to him in November and December 2015. Over the next year, Darcey filed another nine motions for contempt, and Matthews moved to modify the terms of

the PSA and for contempt, alleging that Darcey had prevented communication between him and the children. The circuit court held a hearing in May 2016, and after receiving testimony from the parties and written closing arguments from counsel, the court entered a written order in June 2016 that included the following findings:

8. Child Support: The Court finds that Plaintiff is in willful contempt of the previous orders of the Court for unilaterally reducing his child support on multiple occasions.

. . . .

14. The Defendant is awarded a judgment in the amount of $5,333.00 constituting the Plaintiff's total child support arrears as of April 30, 2016.

. . . .

19. The Defendant is also awarded attorney's fees and costs of $750.00 on the matter of child support.

20. Medical Costs: The Court does not find the Plaintiff in contempt with regard to Medical Expenses.

. . . .

24. The Defendant presented the Court with a list of medical bills that the Plaintiff was to have paid over an eighteen (18) month period running from November 2014 through April of 2016. By the Court's count, the Defendant has submitted 46 medical bills during that 78 week period by a myriad of methods including text, email, and regular mail.

25. During that same 18 month period, however, the evidence reflects that the Plaintiff did not miss a single $150.00 monthly payment towards his existing medical costs arrears as required by the December 10, 2014 order.

26. The Court finds that any of the specifically alleged failures by the Plaintiff to timely pay medical expenses was

*de minimus*, and, at least in part, attributable to the inefficiencies of the existing system by which medical expenses are submitted and paid by the parties.

. . . .

33. Life Insurance Policy: The Court does not find the Plaintiff in contempt with regard to the life insurance policy.

34. The Court finds, however, that the Plaintiff's efforts to procure life insurance in the amount of $2,000,000.00 heretofore have been insufficient. The Plaintiff will make reasonable efforts to procure life insurance in the amount of $2,000,000.00 pursuant to previous agreements and orders of the Court. The Court defines reasonable as making application to no fewer than five (5) insurance providers no later than ninety (90) days from the date of this Order. Should an application be denied, the Plaintiff shall inquire as to the maximum amount of coverage, if any, he could obtain from said company.

35. The Plaintiff shall procure the maximum amount of coverage available to him as a result of these inquiries.

36. Tax Returns: The Court does not find the Plaintiff in contempt with regard to the filing of tax returns.

. . . .

38. Attorney's Fees: The Court finds that the Plaintiff is in willful contempt of the previous orders of the Court for failing to timely pay the attorney's fees ordered on December 10, 2014, and January 21, 2015.

39. The Defendant is awarded attorney's fees and costs of $500.00 on the matter of enforcing the previous attorney's fee orders of the Court to be paid by the Plaintiff no later than one hundred and twenty (120) days from the date of the Order.

40. All Other Claims: Aside from the Plaintiff's willful contempt of the Court's previous child support and attorney's fees orders, the Court finds that neither party is in Contempt of any other previous Orders. All remaining motions for and claims of contempt are denied.

. . . .

46. The Court finds that there has been a material change in the Plaintiff's income since the date he agreed to pay all medical, dental, and orthodontic expenses for the children.

47. Each party will be responsible for half of all the children's non-covered medical, dental, and orthodontic expenses as of the date of this Order.

Darcey has timely appealed from this order.

We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. *Id.* In reviewing a circuit court's findings of fact, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Fletcher v. Stewart*, 2015 Ark. App. 105, 456 S.W.3d 378.

## I. *Property–Settlement Agreement*

A court may not modify an independent contract that is made part of a divorce decree. *See Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007). Questions relating to the construction, operation, and effect of independent property-settlement agreements are governed, in general, by the rules and provisions that apply to other contracts generally. *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761 (2004).

When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.*

## A. Life Insurance

Darcey argues that instead of requiring a $2 million life insurance policy as agreed, the circuit court modified the PSA and permitted Matthews to make five attempts at acquiring a $2 million policy, and if those attempts failed, to obtain a policy in the maximum amount available. Darcey contends that the circuit court impermissibly modified the PSA.

█ In response, Matthews argues that Darcey has waived this argument because the PSA was first modified in December 2014 and she failed to appeal that order. He argues that the December 2014 order modified the PSA by requiring him to only make "reasonable efforts" to obtain an insurance policy, and Darcey did not appeal this order, so "she has waived her right to now complain of similar modifications."

█ Alternatively, Matthews argues that the circuit court's modification should be affirmed based on the doctrine of impossibility of performance. Impossibility of performance of a contract sufficient to excuse the nonperformance on the part of either party means an impossibility consisting in the nature of the thing to be done and not in the inability of the party to do it, and it must be shown that the thing required under the contract cannot be accomplished. *Serio v. Copeland Holdings, LLC*, 2017 Ark. App. 280, 521 S.W.3d 131 (citing *Whipple v. Driver*, 140 Ark. 393, 215 S.W. 669 (1919)). In this case, Matthews asserts that he presented undisputed evidence that he has a history of prostate cancer, an extremely poor credit rating, and has been denied at least twice

after having applied for life insurance policies. He contends that the circuit court reasonably concluded that it might not be possible for him to get a $2 million life insurance policy and therefore modified the agreement to require him to obtain the maximum amount of coverage available if $2 million is not attainable after five attempts.

In reply, Darcey first argues that Matthews cites no authority to support his waiver argument and that the December 2014 order did not modify the relevant portions of the PSA such that waiver could possibly apply. Second, she asserts that Matthews cannot invoke the doctrine of impossibility because the circuit court never made a finding that Matthews could not procure the required $2 million policy.

We hold that the circuit court's order impermissibly modified the PSA and must be reversed. Darcey has not waived her argument because the December 2014 order did not modify Matthews's obligation to procure a $2 million life insurance policy. We also agree with Darcey that Matthews cannot rely on the doctrine of impossibility because the circuit court did not make that finding, and this court cannot make it for him.

## B. Medical, Orthodontic, Vision, Counseling, and Dental Expenses

█ On this point, Darcey argues that the PSA required Matthews to cover all medical, dental, and orthodontic expenses for the children and that the circuit court impermissibly modified the agreement to make each party responsible for half of all the children's noncovered medical, dental, and orthodontic expenses. In support, she cites court of appeals cases finding that the general terms of a PSA cannot be modified by the circuit court. *See* ₈*Fischer*

*v. Fischer*, 2015 Ark. App. 116, 456 S.W.3d 779; *Martin v. Scharbor*, 95 Ark. App. 52, 233 S.W.3d 689 (2006).

In response, Matthews again argues that Darcey has waived this argument because she did not appeal the December 2014 order, which he claims modified the PSA on this issue. Second, he argues that the payment of medical expenses is similar to child support and should therefore always be modifiable. He contends that medical expenses, like child support, are "a necessary expense for the support and care of a child" and that the circuit court's finding that a material change in his income warranted a modification of the responsibility for medical expenses should be affirmed.

In reply, Darcey again asserts that there has been no waiver of her argument and argues that the circuit court's modification of the medical-expenses provision must be reversed under the current case law. She cites *Fischer* and *Martin* and specifically notes that the appellant in *Martin* made a similar argument that "school clothes, school-related expenses, and medical and dental bills not covered by insurance" clearly fall within the definition of child support. *Martin*, 95 Ark. App. at 56, 233 S.W.3d at 693. In that case, this court held that appellant's obligation to pay those expenses was in addition to, and independent of, his child-support obligation and therefore not modifiable. Darcey argues that likewise, in this case, the PSA is clear that the medical expenses are in addition to, and not in the form of, child support; thus, the circuit court's modification of the medical-expenses provision must be reversed.

We first hold that Darcey's argument has not been waived. We also agree that this case is analogous to *Martin* and that Matthews's obligation to pay the children's medical expenses is independent from his

child-support obligation. The circuit court's ruling was therefore an impermissible modification of the PSA, and we reverse on this point.

## II. *Contempt*

To establish civil contempt, there must be willful disobedience of a valid court order. *Balcom v. Crain*, 2016 Ark. App. 313, 496 S.W.3d 405. The order must be definite in its terms and clear about what duties it imposes. *Riddick v. Harris*, 2016 Ark. App. 426, 501 S.W.3d 859. We will not reverse a circuit court's finding of civil contempt unless it is clearly against the preponderance of the evidence. *Williams v. Arnold*, 2015 Ark. App. 715, 479 S.W.3d 56. A finding is clearly against the preponderance of the evidence if, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Catt v. Catt*, 2014 Ark. App. 616, 2014 WL 5697149. In our review, we defer to the superior position of the circuit court to determine the credibility of witnesses and the weight to be given their testimony. *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15.

Darcey contends that the circuit court erred in not finding Matthews in contempt regarding (1) his efforts to obtain a life insurance policy, (2) late reimbursements for medical bills, (3) his failure to pay for the children's prescription eyeglasses, (4) his failure to file his tax returns, (5) his failure to give her advance notice of a trip to Michigan with the children, and (6) his interference with Darcey's exercise of visitation in July 2015. On four of these issues, she also argues that regardless of the contempt finding, Matthews should be responsible for attorney's fees because she had to retain the services of an attorney to address these issues. Matthews generally responds that the cir-

cuit court did not clearly err in finding that he had not willfully disobeyed the court's previous orders.

We agree that the circuit court did not clearly err in the above instances when it did not find Matthews in contempt. The court heard testimony from both parties on these issues, and in our review, we defer to the superior position of the circuit court to determine the credibility of witnesses and the weight to be given their testimony. *Russell, supra.*

We also hold that the circuit court did not err in failing to award attorney's fees on the above motions. According to the PSA, "[i]f either party defaults in performing any obligation under this Amended Agreement, so that the other party is required to engage the services of an attorney to seek enforcement or relief, the defaulting party will pay all of both parties' reasonable attorney's fees, expenses, and costs incurred." Darcey asks this court to find that even though Matthews was not held in contempt on these issues, he still "defaulted" because she was forced to engage the services of an attorney and file numerous contempt motions. But we have no clear definition of what a "default" is under the PSA, nor do we have a finding by the circuit court that Matthews did or did not "default" with regard to the above issues. We do have findings of contempt on the child-support and attorney's-fees issues, and the circuit court awarded her attorney's fees on those issues. Under these circumstances, we affirm the circuit court's decision.

### III. *Attorney's–Fee Award*

In domestic-relations proceedings, the circuit court has the inherent power to award attorney's fees. *Tiner v. Tiner*, 2012 Ark. App. 483, 422 S.W.3d 178. Whether the circuit court should award fees, and if so in what amount, are within the court's discretion. *Id.* When addressing a circuit court's award of attorney's fees, our courts have often observed that there is no fixed formula in determining what is reasonable. *Id.* Given the circuit court's intimate acquaintance with the record and the quality of service rendered, we usually recognize the superior perspective of the circuit court in assessing the applicable factors. *Id.* Accordingly, attorney's fees will not be set aside absent an abuse of discretion. *Id.* An abuse of discretion occurs when the court acts thoughtlessly, without due consideration, or improvidently. *Id.*

On this issue, Darcey argues that the circuit court abused its discretion in awarding her only $750 because it did not properly consider the *Paulson* factors[1] and "it cost [her] far more than $750 for the most prevalent issue in a two-day hearing, preparation for the two-day hearing, three contempt motions, and discovery on the child support issue."

Matthews responds that circuit courts are not required to make specific findings, either written or oral, when awarding attorney's fees in domestic-relations proceedings, citing *Tiner, supra.* Thus, the circuit court was free to use its own judgment and expertise in setting the attorney's-fee award; and in addition, Darcey

---

1. *Paulson v. Paulson*, 8 Ark. App. 306, 652 S.W.2d 46 (1983), held that among the pertinent considerations in determining the amount of attorney's fees are the attorney's judgment, learning, ability, skill, experience, professional standing, the relationship between the parties and the importance of the subject matter of the case, the nature, extent and difficulties of services, the research, anticipation of defenses and means of meeting them and receiving of confidential information and giving of confidential advice before any pleadings are filed or other visual steps are taken.

failed to present any evidence that the award should have been higher. Thus, Matthews contends, the circuit court did not abuse its discretion.

As noted by Matthews, we do not require specific findings on attorney's-fee awards in domestic-relations cases, and Darcey presented no evidence of what amount should have been awarded. We therefore affirm on this point.

Reversed in part; affirmed in part.

Gruber, C.J., and Virden, J., agree.